**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**DOTHAN DIVISION**

| | |
|---|---|
| **JAMES W. BAILEY, IV,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION NO.: 1:10-cv-689-MEF-TFM** |
| | ) |
| **SHERIFF ANDY R. HUGHES, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM BRIEF IN SUPPORT OF DEFENDANTS ANDY R. HUGHES AND**
**COMMANDER KEITH REED'S MOTION TO DISMISS**

COME NOW Houston County Sheriff Andy R. Hughes and Commander Keith Reed, Defendants in the above-entitled action, and submit this Memorandum Brief in support of their contemporaneously filed Motion to Dismiss.

**INTRODUCTION**

On August 13, 2010, the Plaintiff filed a fourteen-count Complaint alleging various violations of his federally protected rights. Said Complaint is a stereotypical shotgun complaint that is both long on novel theories and short on supportive facts. These Defendants, who are not alleged to have been present or even aware of the cell search and eventual extraction of the Plaintiff that took place on August 13, 2008, are charged with everything from failing to protect the Plaintiff to violating the Plaintiff's rights by purchasing TASERs. Commander Reed[1] is not even mentioned in the Factual Allegations and the only allegation regarding Sheriff Hughes is that he sent a letter to the Alabama Department of Corrections asking that the Plaintiff be disciplined for his actions (a request that was allegedly ignored by DOC). Accordingly, Sheriff Hughes and Commander Reed request that the Court dismiss the Plaintiff's claims against them

---

[1] Commander Reed's actual title is Commander for Jail Operations.

and grant them attorneys' fees under 42 U.S.C. § 1988 for being required to defend what are clearly frivolous and baseless claims.

## FACTS

As an initial matter, the Plaintiff alleges that he was "either a pre-trial detainee or awaiting return to the Alabama Department of Corrections." (Doc 1 at ¶ 16.)[2] However, the Plaintiff alleges that after the incident complained of he "was subsequently *taken back to Holman Prison*." (Id. at ¶ 14 (emphasis added).) Persons who are not already convicted are not *taken back* to prison. Accordingly, the Plaintiff had to have been a convicted prisoner at all times relevant.

On August 13, 2008, the Complaint alleges that the Plaintiff was sleeping on his bed on the floor of his cell about two feet away from the toilet. (Doc 1 at ¶ 2.) At approximately 10:50 p.m., Jailers Moon and Armstrong came to his cell purportedly on the orders of Sgt. Buchmann. (Id. at ¶ 1.) The Plaintiff and his cellmates left the cell and Jailer Moon conducted a search. (Id. at ¶ 3.) The Plaintiff alleges that Jailer Moon looked upset that he did not find any contraband in the cell but does not allege that Jailer Armstrong did not find any contraband. (See generally Doc 1 at ¶¶ 1-16.) This failure is notable in that Jailer Armstrong is later alleged to have returned carrying a knife, and Jailer Leary (who was with Armstrong) is alleged to have told the Plaintiff that they needed to speak with him. (Id. at ¶ 5.)

The Plaintiff alleges that he and his fellow cellmates were made to strip, squat, and cough in front of each other. (Doc 1 at ¶ 4.) The Plaintiff alleges that he reminded the jailers that he had a lawsuit against "them" (a blatant misrepresentation as this Court's own records – a proper subject of judicial notice – clearly demonstrate that Jailer Moon was the only officer present who was a Defendant in Case No. 05-419). (Id.; see also Exhibit A, Case Action Summary, Bailey v.

---

[2] The Complaint restarts its paragraph numbering with each section. Unless stated otherwise, paragraph references are to the paragraph numbers in the Factual Allegations section of the Complaint.

Ray Lee Bonin, et al., Case No. 1:05-cv-419-MHT-TFM.)[3]  The Plaintiff also alleges that he told the jailers that because of his ongoing lawsuit, that they were not to return unless they had a "sergeant/supervisor" with them – a nonsensical demand given that the earlier lawsuit included as defendants two sergeants, a commander, and the former-sheriff.  (Id.)  As the Complaint makes clear, the Plaintiff complied with the commands of the jailers during this first encounter and no force was used against him or his cellmates.  (Id. at ¶¶ 1-5.)

Jailers Moon and Armstrong are alleged to have left the cell and returned ten minutes later with Jailer Leary.  (Doc 1 at ¶ 5.)  Jailer Armstrong allegedly had a "black knife" in his hand and Jailer Leary requested that the Plaintiff come out of the cell and speak to the jailers.  (Id.)  The Plaintiff refused.  (Id.)  The Plaintiff repeated his nonsensical demand for a sergeant or supervisor.  (Id.)  Jailer Moon repeated the request for the Plaintiff to come out of the cell and the Plaintiff again refused.  (Id.)  The jailers left without using any force in response to the Plaintiff's non-compliance.  (Id.)

Ten minutes later, the same three jailers returned accompanied by Jailers Chancey, Culbreth, Laney, Harrison, Phillips, and Jackson.  (Doc 1 at ¶ 6.)  The jailers had an active video camera.  (Id. at ¶ 7.)  Jailer Leary opened the cell door and "asked" the Plaintiff to get on his knees.  (Id.)  The Plaintiff refused.  (Id.)  During this time, Jailer Armstrong had a TASER activated and pointed at the Plaintiff.  (Id.)[4]  Jailer Leary "advised" the Plaintiff for a second time to get on his knees, and the Plaintiff again refused repeating his demand for a supervisor and noting that he was "restrained" while in his cell.  (Id. at ¶ 8.)

---

[3] In fact, none of the Defendants in the case at bar were Defendants in the Plaintiff's previous suit.  (Compare Doc 1, with Exhibit A.)

[4] Corrections Officer Armstrong is the only jailer alleged to be armed with a TASER in the Factual Allegations. (Doc 1 at ¶ 1-16.)  However, the Plaintiff alleges in various counts that other jailers used TASERs on the Plaintiff, so it is assumed for purposes of this motion that Corrections Officers Leary and Chancey also had TASERs.  (Doc 1 at pp. 22-25.)

3

The Plaintiff was "advised" for a third time to get on his knees and explicitly warned that he would be shot with the TASER if he did not comply. (Doc 1 at ¶ 9.) Despite the Plaintiff's alleged statement that he feared for his life, he again refused to comply and stated he was not coming out of the cell unless a sergeant was present. (Id.) The Plaintiff's allegations defy all credibility as he had already left the cell once without anything happening to him, and at that point he was not being ordered out of the cell. (Id. at ¶¶ 2, 9.)

The Plaintiff alleges that Jailer Leary and Jailer Moon smiled before "he" shot the Plaintiff with a TASER. (Doc 1 at ¶ 10.)[5] The Plaintiff fell and pulled the wires from the TASER. (Id.) Although not specifically alleged, it would appear the Plaintiff was able to pull the wires free as he alleges he ran out of the cell without touching an officer. (Id. at ¶ 11.) The Plaintiff then alleges "*[a]s BAILEY ran away from the officers* he turned around, with his hands up and was shot again in the leg." (Id.) (Bold and italicized emphasis added, all caps emphasis in the original.) The Complaint alleges that as the Plaintiff "went down" he was kneed in the back and head and received a further discharge from the TASER (presumably to his leg) and another discharge in his back. (Id.) Curiously, paragraph eleven contains no allegation that the Plaintiff was compliant or failing to resist after being shot with the TASER the second time. (Id.) The Plaintiff also does not inform the Court who it was that used the force described in paragraph eleven. (Id.)

The Plaintiff alleges that he was handcuffed and "shackled to the floor". (Doc 1 at ¶ 12.) From this point, the Plaintiff does not allege that any further force was used against him. (Id. at ¶¶ 12-16.) He does allege that about an hour later he was taken to Southeast Alabama Medical Center for removal of one TASER probe that remained in his leg. (Id. at ¶ 12.) He alleges that

---

[5] This allegation is particularly puzzling as even taking into account the Plaintiff's subsequent allegations in the Counts of his Complaint, nothing in the Complaint alleges that Corrections Officer Moon had a TASER. In fact, up until this point in the Complaint, only Corrections Officer Armstrong is alleged to have had a TASER. Consequently, counsel for the Defendants is left wondering who "he" was.

during the trip an unnamed transport officer told him his leg would probably fall off. (Id. at ¶ 13.)  The Plaintiff alleges that he reported the comment to SGT Bonnin upon his return to the jail, but SGT Bonnin only laughed and told the Plaintiff to shut up. (Id.)

The Plaintiff alleges that he was placed in a cell without a toilet, sink, water, or food for approximately eight hours. (Doc 1 at ¶ 13.)  Curiously, the Plaintiff alleges in the factual allegations only that he was placed in the cell – he does not allege who did it. (Id.)  It is not until Count XIV that he alleges Houston County, Sgt. Buchmann, Sgt. Jones, Sgt. Reynolds, Jailer Leary, Jailer Armstrong, Jailer Chancey, Jailer Culbreth, Jailer Laney, Jailer Harrison, and Jailer Phillips placed him in the cell.  According to the Plaintiff, therefore, it took Houston County, three sergeants, and seven jailers to put him in the "closet cell". (Id. at pp. 36-37.)

The Court should note the timing of the Plaintiff's allegations.  The initial encounter with the Plaintiff began at 10:54 p.m. on August 13, 2008.  As alleged, there was a cell and inmate search, a ten-minute break, a short conversation followed by another ten-minute break, and an altercation followed by a trip to the hospital an hour later. (Id. at ¶¶ 1-13.)  The only reasonable inference is that the Plaintiff was asleep for that period as he would have been placed in the cell in the very early morning hours of August 14, 2008.  Notably, the Plaintiff does not allege that he requested food, water, or toilet facilities during this period. (Id. at ¶¶ 1-16.)

The Plaintiff alleges that he was subsequently returned to Holman Prison. (Doc 1 at ¶ 14.)  Allegedly, Sheriff Hughes and SGT Buchmann sent a letter requesting that DOC discipline the Plaintiff – apparently for the incident on August 13, 2008. (Id.)  The Complaint alleges that the Plaintiff was not disciplined. (Id.)  This is the only allegation in the Factual Allegations about Sheriff Hughes. (Id. at ¶¶ 1-16.)

In the Counts portion of the Complaint, the Plaintiff adds some additional allegations with respect to Sheriff Hughes and Commander Reed.  They are alleged to have decided to

purchase TASERs for use in the jail.  (Doc 1 at pp. 26-30.)  The Plaintiff alleges that the jail was overcrowded, resulting in him sleeping on the floor.  (Id. at pp. 30-31.)  The Plaintiff alleges that Sheriff Hughes and Commander Reed knew or should have known of the alleged overcrowding but provides no specific factual allegations to support these conclusory allegations.  (Id.)

The Complaint is notable for what it does not allege.  The Complaint does not allege that Sheriff Hughes or Commander Reed was present during the August 13, 2008 incident or had any foreknowledge that the incident would occur.  (Doc 1 at ¶¶ 1-16.)  The Complaint does not allege that Sheriff Hughes or Commander Reed had any personal knowledge regarding where the Plaintiff was sleeping or that he complained about the situation to either Defendant prior to the incident.  (Id.)  Finally, the Plaintiff does not allege that he has returned to the Houston County Jail in the two years following the incident or that he will return there any time in the future.[6] (Id.)

### STANDARD OF REVIEW

The United States Supreme Court has rejected the "no set of facts" standard for determining the sufficiency of a complaint challenged by a Rule 12(b)(6) motion.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) (overruling Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).[7]  Regarding Conley, the Supreme Court noted that the "no set of facts" language had been essentially taken out of context for fifty years.  550 U.S. at 562-63.  On "a focused and literal reading of Conley's 'no set of facts,' a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that

---

[6] Nor can he and survive a Rule 11 motion unscathed as the Plaintiff is serving life without the possibility of parole in Holman Prison.

[7] See also Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005); O'Brien v. DiGrazia, 544 F.2d 543, 546, n.3 (C.A. 1 1976) ("[W]hen a plaintiff . . . supplies facts to support his claim, we do not think that Conley imposes a duty on the courts to conjure up unpleaded facts that might turn a frivolous claim of unconstitutional . . . action into a substantial one"); McGregor v. Industrial Excess Landfill, Inc., 856 F.2d 39, 42-43 (C.A. 6 1988) (quoting O'Brien's analysis).

a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Id. at 562. Instead, the Twombly Court held that

> this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: *once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint*.

550 U.S. at 563 (emphasis added).

What a complaint needs, in the Twombly Court's view, is facts. As a general rule, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . ." 550 U.S. at 555. However, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Id. (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." Id.

Even under Rule 8(a) there must be a "'statement of circumstances, occurrences, and events in support of the claim presented' and . . . not . . . a pleader's 'bare averment that he wants relief and is entitled to it.'" Twombly, 550 U.S. at 555 (citations omitted). "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing only 'fair notice' of the nature of the claim but also 'grounds' on which the claim rests." Id. (citations omitted). Furthermore, "[p]leadings must be something more than an ingenious academic exercise in the conceivable." Marsh v. Butler County, 268 F.3d 1014, 1037 (11th Cir. 2001) (en banc). Unsupported conclusions of law or of mixed law and fact are not sufficient to withstand dismissal under Rule 12(b)(6). Marsh, 268 F.3d at 1036 n.16; see also South Florida Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996) (noting "as a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss").

When, as in the instant case, a plaintiff brings 42 U.S.C. § 1983 claims and a defendant official asserts qualified immunity, the Plaintiff's factual pleading burden is heightened even further. GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998); Epps v. Watson, 492 F.3d 1240, 1242 (11th Cir. 2007). It is the Plaintiff's burden to allege sufficient specific supporting facts or face dismissal of his claims. Marsh, 268 F.3d at 1036 n.16; Montalvo, 84 F.3d at 408 n.10.

Recently, however, a *panel* of the Eleventh Circuit held that it had the authority – in contravention of established Eleventh Circuit rules – to overrule the heightened pleading standard. Randall v. Scott, 610 F.3d 701 (11th Cir. June 30, 2010). Eleventh Circuit rules explicitly forbid a panel from overturning the decision of another panel. United States v. Smith, 122 F.3d 1355, 1359 (11th Cir.1997) (per curiam). "While an intervening decision of the Supreme Court can overrule the decision of a prior panel of our court, the Supreme Court decision must be clearly on point." Garrett v. Univ. of Ala. at Birmingham Bd. of Trs., 344 F.3d 1288, 1292 (11th Cir. 2003) (per curiam). Nonetheless, the Randall panel found that a United States Supreme Court case – that did not mention the heightened pleading standard even in *dicta* – "effectively overturned" the Eleventh Circuit's heightened pleading precedent, and asserted that as the authority to overturn the heightened pleading standard. Randall, 610 F.3d at 708-710 (discussing Ashcroft v. Iqbal, 556 U.S. ----, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

For purposes of preserving the issue, these Defendants assert that the heightened pleading standard remains applicable and *must* be applied to 42 U.S.C. § 1983 cases involving qualified immunity or the principles underlying qualified immunity and the very purpose of the immunity (protecting government officials from vexatious litigation and allowing them to do their jobs without fear of devastating financial consequences) will be destroyed.

8

**ARGUMENT**

The Complaint contains a paucity of factual allegations respecting Sheriff Hughes and Commander Reed.  The claims against these Defendants are due to be dismissed for three reasons.  First, as a convicted inmate, had the Plaintiff actually made valid claims, they would have arisen under the Eighth Amendment and not the Fourteenth Amendment.  Second, in their individual capacities, Sheriff Hughes and Commander Reed are entitled to qualified immunity.  In their official capacities, these Defendants are not "persons" for purposes of any 42 U.S.C. § 1983 claims for money damages, and the Plaintiff lacks standing to pursue claims for equitable relief.  Finally, because the Plaintiff's claims against these two Defendants are clearly frivolous, Sheriff Hughes and Commander Reed are entitled to attorneys' fees and costs under 42 U.S.C. §1983.

I.    **THE PLAINTIFF'S FOURTEENTH AMENDMENT CLAIMS ARE DUE TO BE DISMISSED**

Whether the Plaintiff was a pretrial detainee or convicted prisoner determines which constitutional amendment is applicable.  The Eighth Amendment contains the rights of convicted prisoners while the Fourteenth Amendment's Due Process Clause governs the rights of pretrial detainees.  Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996).  The analysis under either amendment is the same.  Hamm v. DeKalb County, 774 F.2d 1567, 1574 (11th Cir. 1985).  However, the Plaintiff cannot maintain claims under both amendments.  Cottrell, 85 F.3d at 1490.

While the Plaintiff attempts to have it both ways, he clearly cannot.  The Plaintiff alleges that he was "taken back" to Holman prison.  (Doc 1 at ¶ 14.)  These allegations clearly indicate the Plaintiff was a convicted prisoner.  Accordingly, he cannot maintain Fourteenth Amendment claims.  Cottrell, 85 F.3d at 1490.  Therefore, the Plaintiff's Fourteenth Amendment claims are due to be dismissed.  Id.

9

II.   **SHERIFF HUGHES AND COMMANDER REED ARE ENTITLED TO QUALIFIED IMMUNITY IN THEIR INDIVIDUAL CAPACITIES.**

The Plaintiff's federal individual capacity claims fails against these Defendants as a matter of law because Sheriff Hughes and Commander Reed are entitled to qualified immunity. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Once determined that a defendant acted within his discretionary authority, courts use a two-part test to determine whether qualified immunity is proper.  In Saucier v. Katz, the Supreme Court directed courts to use the following two-part test to determine whether qualified immunity applies:  first, the court determines whether there was a constitutional violation; second, the court determines whether the constitutional right in question was clearly established at the time of the alleged violation of the right.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Recently, however, the Court abandoned the rigid order of analysis enunciated in Saucier and held that courts are no longer required to first determine whether there was a constitutional violation.  Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 818 (2009).

> On reconsidering the procedure required in Saucier, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory.  The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

Pearson, 129 S. Ct. at 818.

A.   **Sheriff Hughes and Commander Reed Acted Within Their Discretionary Authority**.

Once a public official has asserted the defense of qualified immunity, he bears the burden of proving that he was acting within his discretionary capacity.  Rich v. Dollar, 841 F.2d 1558,

10

1563 (11th Cir. 1988).  In order to establish that he is acting within his discretionary capacity, a public official asserting qualified immunity need only show "objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority."  Id. at 1564 (quoting Barker v. Norman, 651 F.2d 1107, 1121 (5th Cir. 1981)).   Courts should not be "overly narrow" in interpreting this requirement.  Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994).  To determine this question "a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties."  Harbert Intern., Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998) (citation omitted).  As one district court observed, "the determination that an officer was acting within his discretionary authority is quite a low hurdle to clear."  Godby v. Montgomery County Bd. of Educ., 996 F. Supp. 1390, 1401 (M.D. Ala. 1999).

In the instant case, Sheriff Hughes and Commander Reed acted within their discretionary authority.  It is only by virtue of their respective positions as Houston County Sheriff and Commander for Jail Operations that they have any authority to run a jail or purchase equipment. It cannot reasonably be argued that these duties are unrelated to the duties of a sheriff or Commander for Jail Operations.  These Defendants easily clear the low hurdle of establishing that they acted within their discretionary authority.  James, 157 F.3d at 1282.

**B.     Sheriff Hughes and Commander Reed Did Not Violate the Plaintiff's Federally Protected Rights.**

The Complaint does not allege any facts from which it could be determined that Sheriff Hughes or Commander Reed violated the Plaintiff's rights.  The Plaintiff's claims against these Defendants are found in Counts I-IV, VI, IX-XI.  Counts I, IX, and X appear to be based on the purchase and issuance of TASERs in the Houston County Jail.  Counts II and VI allege these Defendants used excessive force on the Plaintiff or failed to protect him.  Count III alleges an

11

illegal strip search claim. Count IV alleges these Defendants violated the Plaintiff's First Amendment rights by retaliating against him following his filing of his first lawsuit against the previous sheriff and others. Count XI alleges that the Plaintiff's Eighth Amendment rights were violated due to overcrowding conditions in the jail.

None of these Counts state a claim against these Defendants. First, to the extent the Plaintiff's Complaint attempts to impose vicarious liability on these Defendants, such claims fail as a matter of law. Second, the Plaintiff's excessive force, strip search, retaliation, and overcrowding claims fail against these Defendants as they are couched as direct participation claims, and there are no facts alleged supporting such claims against these Defendants. Third, the Plaintiff's claims with respect to the TASERs fail as a matter of law because the Eleventh Circuit and other federal courts have clearly upheld their use. Finally, to the extent the Plaintiff's Complaint could be construed or amended to include supervisory liability claims, those claims fail as a matter of law in light of recent pronouncements of the United States Supreme Court.

### 1.      1983 claims cannot be premised on *respondeat superior*.

To the extent that Plaintiff's claims against Sheriff Hughes and Commander Reed are an attempt to hold them vicariously liable, his claims fail as a matter of law. Neither the express language of § 1983 nor the holdings of the United States Supreme Court support liability on this basis.

42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, ***subjects, or causes to be subjected***, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

(Emphasis added.) The language of the statute requires that there be a direct causal link between plaintiff and the actions of a putative defendant. Merely employing an individual who causes

12

harm is insufficient to invoke the remedy of this statute.  The United States Supreme Court addressed this exact issue and adopted this holding over 30 years ago.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S. Ct. 2018 (1978).

> **2.** **Sheriff Hughes and Commander Reed did not use excessive force, fail to protect, strip search the Plaintiff, or retaliate against him, or subject him to overcrowding.**

As noted previously, the Plaintiff has alleged that Sheriff Hughes and Commander Reed used excessive force against him, failed to protect him, strip-searched him (or failed to protect him from it), and retaliated against him for filing a previous lawsuit.  (Doc 1 at Counts II-IV, VI.)  The problem for the Plaintiff is that these are direct participation claims and *nowhere* in the Complaint does the Plaintiff allege that either Sheriff Hughes or Commander Reed were present during the cell extraction.  There are no allegations that Sheriff Hughes or Commander Reed used force of any kind on the Plaintiff.  There are no allegations that Sheriff Hughes or Commander Reed was present and in a position to intervene during either the use of force or the strip search – absolute prerequisites under a failure to protect theory.  Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir. 1998).  There are no allegations that either of these Defendants ordered the search or the cell extraction.  Consequently, as alleged in the Complaint, neither Sheriff Hughes nor Commander Reed used excessive force, subjected the Plaintiff to a strip search, or failed to protect him.

With respect to the Plaintiff's First Amendment retaliation claim, the Court should note that neither of these Defendants were defendants in the Plaintiff's earlier lawsuit.  In fact, two of the defendants in the Plaintiff's first lawsuit were predecessors in office.  Neither Sheriff Hughes nor Commander Reed would have any reason to retaliate against the Plaintiff.

Even if they had a reason, the Complaint contains no allegations that Commander Reed did anything to him at all.  Consequently, the Plaintiff has utterly failed to make out a retaliation

13

claim against Commander Reed.  Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir. 1989) (requiring that a plaintiff allege that actions were taken because of the plaintiff's speech).  The Plaintiff has not alleged that Commander Reed did anything, let alone something in response to his filing of a lawsuit.

With respect to Sheriff Hughes, Count IV alleges that the retaliatory acts consisted of searching the Plaintiff's cell twice, forcing the Plaintiff to expose himself in front of other inmates, tasing him, and wrestling him to the ground.  (Doc 1 at pp. 20-21.)  As noted previously, the Complaint does not allege that Sheriff Hughes was involved in any of these activities.  Consequently, the Complaint fails to make out a retaliation claim against Sheriff Hughes.  Wildberger, 869 F.2d at 1468.

Finally, the Plaintiff alleges that he was subjected to overcrowding conditions which required him to sleep on the floor two feet away from a toilet.  As an initial matter, the Plaintiff's allegations do not support an inference that the jail was overcrowded.  The Complaint provides no facts with respect to the capacity of the jail, the number of inmates on the day complained of, the conditions of the bunks, or any other facts that would support such a finding.  At best, all that can be safely said is that there were more people in the Plaintiff's cell than there were bunks.

Even if such an inference could be gleaned from the facts alleged, overcrowding is not per se constitutionally deficient.  This is true even when it requires inmates to sleep on the floor.  See, e.g., Fischer v. Ellgood, 328 Fed. App'x 428 (11th Cir. 2007) (finding that a showing of overcrowded cells with inmates sleeping on the floor did not rise to the level of deliberate indifference); Alfred v. Bryant, 2010 WL 1881064 (11th Cir. 2010) (finding that requiring an inmate to sleep in a cell *without a mattress* for eighteen days did not violate the Eighth Amendment).  Double-celling that provides even less than fifty square feet per inmate has also been found to not violate the Constitution.  Rhodes v. Chapman, 45 U.S. 337, 348-49 (1981)

(holding that double-celling in a small cell that required two inmates to share sixty-three square feet was not unconstitutional).

### 3.    TASERs are constitutional as a matter of law.

In Counts I, IX, and X, the Plaintiff alleges that these Defendants violated his federally protected rights by purchasing and issuing TASERs.  Such claims are clearly frivolous as case after case has upheld the use of TASERs.  See, e.g., Draper v. Reynolds, 369 F.3d 1270, 1278 (11th Cir. 2004) (single one-time shocking with a TASER not a constitutional violation); Burkett v. Alachua County, 250 Fed. Appx. 950, 952-53 (11th Cir. 2007) (no constitutional deprivation where Corrections Officers used TASER on mentally ill inmate); Mann v. Taser Intern., Inc., 588 F.3d 1291, 1306 (11th Cir. 2009) (finding no excessive force where handcuffed and shackled arrestee was tased three times); Forrest v. Prine, 620 F.3d 739, 745 (7th Cir. 2010); Lewis v. Downey, 581 F.3d 467, 477-78 (7th Cir. 2009) ("In a jail or prison setting, it is not hard to imagine any number of scenarios that would justify the [use of] ... taser guns."); Michenfelder v. Sumner, 860 F.2d 328, 336 (9th Cir. 1988) (policy of allowing use of taser guns on inmate who refuses to submit to a strip search does not constitute cruel and unusual punishment); Caldwell v. Woodford County, 968 F.2d 595, 600-01 (6th Cir. 1992) (use of stun gun and straight jacket on inmate who refused to obey Corrections Officers' orders did not violate Eighth Amendment); Cowart v. Smith, 2009 WL 3135011, *8 (M.D. Ala. 2009) (finding Corrections Officer did not use excessive force when tasing an inmate).

The Court should also note that the Plaintiff's requested injunctive relief flies in the face of his claims regarding TASERs.  Specifically, the Plaintiff requests that the Court enter an injunction requiring the Defendants to "set in place strict guidelines for the use of tasers."  (Doc 1 at p. 39.)  If TASERs are unconstitutional, no guidelines or policies could be set.

15

In light of this crystal clear authority from the Eleventh Circuit, Sixth Circuit, Seventh Circuit, and Ninth Circuit, as well as decisions of this Court, the Plaintiff's claims that the purchase and use of TASERs is unconstitutional is frivolous.

**4.      The Plaintiff cannot maintain supervisory claims against these Defendants.**

The Plaintiff cannot maintain supervisory liability claims against Sheriff Hughes and Commander Reed for two reasons.  First, recent federal appellate decisions cast doubt on whether such claims can be brought under 42 U.S.C. § 1983.  Second, even under the old standard, the instant Complaint fails to make out supervisory liability claims.

**a.      Supervisory liability no longer exists.**

The United States Supreme Court appears to no longer recognize "supervisory liability" claims in § 1983 suits.  In Ashcroft v. Iqbal, the Supreme Court concluded that because there is no *respondeat superior* liability under § 1983 or the Bivens doctrine, the term "supervisory liability" is a misnomer.  129 S. Ct. 1937, 1949 (2009).  Without discussing previous circuit court precedent, the Court held that supervisors cannot be found liable based upon their knowledge and acquiescence in their subordinates unconstitutional conduct.  Iqbal, 129 S. Ct. at 1949.  "In a § 1983 suit . . . – where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer.  Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  Id.  In other words, a supervisory official, like any other governmental official, may only be held liable for his or her own conduct resulting in a violation of a plaintiff's federally protected right.  Thus, pursuant to Iqbal, the Plaintiff's claims against Sheriff Hughes and Commander Reed – to the extent they rely on supervisory liability – are due to be dismissed.

Despite the Court's holding in Iqbal, the issue of whether Iqbal is an absolute bar to supervisory § 1983 claims appears to be unsettled in the Eleventh Circuit.  See Gross v. White,

16

340 F. App'x 527, 531 (11th Cir. 2009) (demonstrating the Eleventh Circuit, post-Iqbal, applying the standard for supervisory liability set out in Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003)).[8]  While the Eleventh Circuit has not addressed the issue, the Ninth Circuit has concluded that Iqbal indeed bars supervisory liability claims.  Simmons v. Navajo County, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (holding that "to survive summary judgment, the [plaintiffs] must adduce evidence that [the supervisory defendants] themselves acted or failed to act unconstitutionally, not merely that a subordinate did").

Additionally, the First, Third, and Tenth Circuits have expressed doubt over whether even a limited form of supervisory liability exists post-Iqbal.  See Arocho v. S. Nafziger, 367 F. App'x 942, 947 (10th Cir. 2010) (stating that post-Iqbal "supervisory liability itself may no longer be tenable"); Bayer v. Monroe County Children and Youth Servs., 577 F.3d 186, 191 n.5 (3d Cir. 2009) (stating the district court may have erred in its determination that a genuine issue of fact existed regarding whether a supervisor had knowledge of a constitutional violation as post-Iqbal, "it is uncertain whether proof of such personal knowledge, with nothing more would provide a sufficient basis for holding [a supervisor] liable"); Maldonado v. Fontanes, 568 F.3d 263, 275 n.7 (1st Cir. 2009) (noting that "recent language from [Iqbal] may call into question our prior circuit law on the standard for holding a public official liable for damages under § 1983 on a theory of supervisory liability").  Thus, should this Court determine that Iqbal indeed bars supervisory liability, it would conform with Iqbal and not violate Eleventh Circuit precedent.

**b.      The Complaint does not allege plausible supervisory liability under the Cottone standard.**

Irrespective of whether Iqbal bars supervisory liability claims, Plaintiff's claims are due to be dismissed under the Cottone standard.  As discussed previously, the Complaint does not aver that Sheriff Hughes or Commander Reed personally participated in any of the alleged

---

[8] Although Gross applies Cottone post-Iqbal, the Eleventh Circuit did not reject or distinguish Iqbal.

17

constitutional violations.  Consequently, if the Complaint alleges anything against these two Defendants, it must be based upon supervisory liability.  See Marsh, 268 F.3d at 1035 (observing that in the absence of allegations of personal involvement, "[t]he Sheriff's potential liability. . . can be only policymaker liability").

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability."  Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).  "Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation."  Cottone, 326 F.3d at 1360.  A plaintiff can establish a causal relationship between a supervisory official's acts and the acts of his subordinates in the three following ways: (1) the supervisor had notice of a widespread history of abuse which he neglected to correct, Gonzales v. Reno, 325 F.3d, 1228, 1234 (11th Cir. 2003); Cottone, 326 F.3d at 1360; (2) the supervisor implemented a custom or policy that resulted in deliberate indifference to constitutional rights, Gonzales, 325 F.3d at 1234-35; Cottone, 326 F.3d at 1360; or (3) the facts support "the inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Gonzalez, 325 F.3d at 1235.

Here, the Complaint does not contain any factual allegations that would support liability on any of the Cottone prongs.  The Complaint contains no allegations of any policy other than that of allowing TASERs to be used in the jail.  Furthermore, "[a] *plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity*."  Colle v. Brazos County, 981 F.2d 237, 245 (5th Cir. 1993) (emphasis added).  As discussed above, such a policy is constitutional as a matter of law.  There are no allegations anywhere in the

Complaint that Sheriff Hughes or Commander Reed directed the cell search or extraction or even knew that these events were occurring until after it was over.

The Plaintiff has also failed to allege facts supporting a finding that there was a widespread history of abuse or neglect.  To be sure, the Plaintiff alleges that he had previously file suit related to being strapped in a restraint chair for a prolonged period of time.  However, the incident complained of occurred prior to either of these Defendants taking office.  Furthermore, a single incident is insufficient as a matter of law to establish a widespread history of abuse.  City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985).  In order to constitute widespread abuse, the deprivations must be "*obvious, flagrant, rampant and of continued duration rather than isolated occurrences*."  Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (emphasis added).  Accordingly, the Plaintiff has failed to allege valid supervisory liability claims – even if such claims remain valid after Iqbal.

### C.    No clearly established law provided "fair warning".

The Plaintiff must show that clearly established law provided Sheriff Hughes and Commander Reed with fair warning that their conduct was unlawful by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law.  Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted).  The Eleventh Circuit has identified the latter method as an "obvious clarity" case.  Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted).  In order to show that the conduct of the Defendants was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent."  Willingham v. Loughnan, 261 F.3d 1178, 1187-88 (11th Cir. 2001).  "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent

19

officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

Given the utter lack of specific factual allegations contained in the Complaint that would support either direct or supervisory liability, the task of finding a case with materially similar facts is impossible. The undersigned are unaware of any case that has upheld liability against supervisors who did not participate, order, or draft policies that permitted a constitutional violation. The closest the Plaintiff comes to making such a claim are his TASER purchase/use claims. Even if this Court were to decide to become the first in the Eleventh Circuit to declare the use of TASERs to be unconstitutional, these Defendants would still be entitled to qualified immunity in light of the case law existing at the time of the alleged violation that held to the contrary. Draper, 369 F.3d at 1278; Burkett, 250 Fed. Appx. at 952-53.

Consequently, the best the Plaintiff can attempt to show on the present record is that this is an obvious clarity case. However, as demonstrated previously, the lack of facts cuts against the Plaintiff's ability to make such a showing. In fact, the case law tends to show the exact opposite. Consequently, because the Plaintiff cannot meet his second qualified immunity burden, his claims against Sheriff Hughes and Commander Reed are due to be dismissed.

## III.   THE PLAINTIFF'S OFFICIAL CAPACITY CLAIMS ARE DUE TO BE DISMISSED.

The Plaintiff's official capacity claims are due to be dismissed for three reasons. First, to the extent the Plaintiff seeks money damages from Sheriff Hughes and Commander Reed in their official capacities, money damages are not available under 42 U.S.C. § 1983 for official capacity claims. Second, the Plaintiff lacks standing to obtain the requested equitable relief. Finally, the Plaintiff cannot satisfy the requirements for obtaining equitable relief.

20

**A.      The Plaintiff's Official Capacity Claims are Barred by Eleventh Amendment Immunity and the Definition of a "Person" Under 42 U.S.C. § 1983.**

The Plaintiff's claims against Sheriff Hughes and Commander Reed in their official capacities are due to be dismissed for lack of subject matter jurisdiction; as such claims are barred by the Eleventh Amendment to the United States Constitution. Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, 916 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (sheriff entitled to Eleventh Amendment immunity).

In addition, the official capacity claims must fail because 42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution. 42 U.S.C. § 1983 (emphasis added). The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Any official capacity claims against Sheriff Hughes and Commander Reed should therefore be dismissed because they are not "person[s]" under § 1983. Id.; Carr, 916 F.2d at 1525 n.3.

**B.      The Plaintiff Lacks Standing.**

The Plaintiff seeks to have the Court order the Defendants to promulgate strict guidelines on TASER use and forbid even carrying such weapons around him. (Doc 1 at p. 39.) The Plaintiff has failed to allege facts that would grant him standing to seek such relief. Specifically, the Plaintiff has not alleged that he is being held in the Houston County Jail.[9] In fact, he

---

[9] Nor can the Plaintiff make such an allegation and survive a Rule 11 Motion as he and his attorney know that he is currently serving life without parole at Holman Prison.

21

specifically has alleged that he was returned to Holman Prison shortly after the incident complained of. (Doc 1 at ¶ 14.)

A plaintiff seeking the jurisdiction of the federal courts must show a personal stake in the outcome. Baker v. Carr, 369 U.S. 186, 204 (1962). The plaintiff must have sustained, or is about to sustain, some direct injury. Golden v. Zwickler, 394 U.S. 103, 109-110 (1969). Of direct relevance to the present case, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974).

In City of Los Angeles v. Lyons, the plaintiff alleged that he had been subjected to a chokehold by arresting officers in violation of his federally protected rights. 461 U.S. 95, 97 (1983). The plaintiff sought an injunction barring the future use of police chokeholds. Id. at 98. After the Ninth Circuit affirmed the district court's grant of a preliminary injunction, the United States Supreme Court reversed, holding that the plaintiff lacked standing. Id. at 99-100. The Court stated that the plaintiff's standing rested solely on pure speculation that he might be stopped by the police, might be arrested, and might be subjected to another chokehold. Id. at 108. The court noted that five months elapsed between the choking incident and the filing of the complaint and the plaintiff was not subjected to another chokehold. Id.

The Plaintiff in the instant case is the same position as the plaintiff in Lyons. Any request for equitable relief rests solely on speculation that he might return to the Houston County Jail, might again refuse to follow orders, and might again have to be tased in order to get him under control. Such speculation into future conduct, even if it did violate the Plaintiff's rights, does not afford them standing to seek equitable relief against Sheriff Hughes and Commander Reed in their official capacities. Lyons, 461 U.S. at 108.

22

**C.**     **The Plaintiff Cannot Assert Facts to Support the Court Granting Equitable Relief.**

The Plaintiff must satisfy three elements to justify injunctive or other equitable relief against Sheriff Hughes and Commander Reed.  First, he must succeed on the merits (in this context, he must show an actionable wrong).   Second, he must show the existence of a continuing irreparable injury.  Finally, he must prove that he has no other adequate relief at law. Newman v. State of Alabama, 683 F.2d 1312, 1319 (11th Cir. 1982).  The Plaintiff cannot establish any of these elements.

First, the Plaintiff cannot show an actionable injury caused by Sheriff Hughes or Commander Reed.  As set forth above, the Plaintiff has not pled any facts from which the Court could conclude that either of these Defendants committed an actionable wrong.  However, even if the Complaint could be construed as making out an actionable wrong committed by Sheriff Hughes and/or Commander Reed, it does not contain allegations establishing the second element. In particular, there is no continuing irreparable injury.  The Plaintiff alleges that he was returned to prison and has not alleged that he has returned to Houston County since sometime in August 2008 – roughly two and one-half years ago.  (See generally Doc. 1.)

Finally, the Plaintiff cannot realistically argue that he has no adequate remedy at law. The Plaintiff has brought individual capacity claims for money damages against all of the Defendants.   Moreover, Sheriff Hughes and Commander Reed's entitlement to qualified immunity does not deprive him of an adequate remedy.  See Rittenhouse v. DeKalb County, 764 F.2d 1451, 1459 (11th Cir. 1985).  It is sufficient that the Plaintiff has the opportunity to adjudicate the question.  Id.  Accordingly, because the allegations fail to establish the elements necessary to obtain an injunction or other equitable relief, Sheriff Hughes and Commander Reed, in their official capacities, are entitled to a dismissal of the Plaintiff's official capacity § 1983 claims as a matter of law.

23

**IV.   SHERIFF HUGHES AND COMMANDER REED ARE ENTITLED TO ATTORNEYS' FEES AND COSTS.**

In any action or proceeding to enforce . . . [42 U.S.C. § 1983] . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b).   Federal courts have made and upheld attorneys' fees awards under § 1988(b) for prevailing defendants where a plaintiff's claims were frivolous or groundless.   A case is frivolous if it is "so lacking in arguable merit as to be groundless or without foundation." Sullivan v. School Bd. of Pinellas County, 773 F.2d 1182, 1188 (11th Cir. 1985).   The Eleventh Circuit looks to three factors in determining whether a prevailing defendant is entitled to an award of attorneys' fees: 1) whether the plaintiff established a prima facie case; 2) whether the defendant offered to settle; and 3) whether the action was decided on dispositive motions rather than at a trial on the merits.   Head v. Medford, 62 F.3d 351, 356 (11th Cir. 1995); Sullivan, 773 F.2d at 1189.

All of the elements necessary for an award of attorneys' fees to Sheriff Hughes and Commander Reed are present in this case.   As discussed extensively above, the Plaintiff has not pled anything close to a prima facie case against these Defendants.   The only specific action these Defendants are alleged to have taken is to purchase/issue TASERs (both Defendants) and write a letter to DOC (Sheriff Hughes).   (See generally Complaint.)   Also as discussed previously, the Plaintiff's TASER purchase/issue claims run directly contrary to ample precedent from this Court, the Eleventh Circuit, and at least three other federal courts of appeals.

The last two elements are even more easily disposed of.   The Defendants have made no offer to settle this case.   Once the Court grants the Defendant's Motion to Dismiss, the claims against these Defendants will not have gone to trial.   Accordingly, following the Court's granting of Sheriff Hughes and Commander Reed's Motion to Dismiss, the Court should enter an Order

24

finding the Plaintiff's claims against them to be frivolous and awarding them costs and attorneys' fees.

## CONCLUSION

Based upon the foregoing, Sheriff Hughes and Commander Reed request that the Court issue an Order dismissing them from this action and awarding them costs and attorneys fees.

Respectfully submitted this 22nd day of February, 2011.

<u>s/Gary L. Willford, Jr.</u>
GARY L. WILLFORD, JR., Bar No. WIL198
Attorney for Defendants Sheriff Andy Hughes and Commander Keith Reed
WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
Post Office Box 240909
Montgomery, Alabama  36116
Telephone:  (334) 262-1850
Fax:  (334) 262-1889
E-mail:  gwillford@webbeley.com

<u>s/Gary C. Sherrer</u>
GARY C. SHERRER, Bar No. SHE016
Attorney for Defendants Sheriff Andy Hughes and Commander Keith Reed
SHERRER, JONES & TERRY, P.C.
335 West Main Street
Dothan, AL 36301-1613
Telephone:  (334) 678-0100
Fax:  (334) 678-0900
E-mail:  gary@sherrerjones.com

25

## CERTIFICATE OF SERVICE

I hereby certify that on this the 22nd day of February, 2011, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide notice to the following CM/ECF participants:

Allen Kenneth Mitchell, Esquire
Attorney at Law
707 West Main Street
Dothan, AL  36301

Charles Neville Reese, Esquire
Reese & Reese
P. O. Drawer 250
Daleville, AL  36322-0250

Stephen Parrish Dees, Esquire
Fred White Tyson, Esquire
Rushton, Stakely, Johnston & Garrett, P.A.
P. O. Box 270
Montgomery, AL  36101-0270

**s/Gary L. Willford, Jr.**
Of Counsel