**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
DOTHAN DIVISION**

| | |
|---|---|
| **JAMES W. BAILEY, IV,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION NO.: 1:10-cv-689-MEF-TFM** |
| | ) |
| **SHERIFF ANDY R. HUGHES, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM BRIEF IN SUPPORT OF DEFENDANTS BUCHMANN,
JONES, AND REYNOLDS'S MOTION TO DISMISS**

COME NOW the Defendants designated in the Plaintiff's Complaint as "Sgt. Buchman", "Sgt. Jones", and "Sgt. Reynolds"[1] and submit this Memorandum Brief in support of their contemporaneously filed Motion to Dismiss.

**INTRODUCTION**

On August 13, 2010, the Plaintiff filed a fourteen-count Complaint alleging various violations of his federally protected rights. Said Complaint is a stereotypical shotgun complaint that is both long on novel theories and short on supportive facts. These Defendants, two of whom are not alleged to have been present or even aware of the cell search and eventual extraction of the Plaintiff that took place on August 13, 2008, are charged with everything from failing to protect the Plaintiff to violating the Plaintiff's rights by purchasing TASERs. Sergeants Jones and Reynolds are not even mentioned in the Factual Allegations of the Complaint. Accordingly, these Defendants request that the Court dismiss the Plaintiff's claims against them and Sergeants Jones and Reynolds request that the Court also grant them attorneys' fees under 42 U.S.C. § 1988 for being required to defend what are clearly frivolous and baseless claims.

---

[1] The correct names of these Defendants are Sgt. Cindy Buchmann, Sgt. Glenn Jones, and Sgt. Beverly Reynolds.

1

**FACTS**

As an initial matter, the Plaintiff alleges that he was "either a pre-trial detainee or awaiting return to the Alabama Department of Corrections." (Doc 1 at ¶ 16.)[2]  However, the Plaintiff alleges that after the incident complained of he "was subsequently *taken back to Holman Prison*." (Id. at ¶ 14 (emphasis added).)  Persons who are not already convicted are not *taken back* to prison.  Accordingly, the Plaintiff had to have been a convicted prisoner at all times relevant.

On August 13, 2008, the Complaint alleges that the Plaintiff was sleeping on his bed on the floor of his cell about two feet away from the toilet.  (Doc 1 at ¶ 2.)  At approximately 10:50 p.m., Corrections Officers Moon and Armstrong came to his cell purportedly on the orders of Sgt. Buchmann.  (Id. at ¶ 1.)  The Plaintiff and his cellmates left the cell and Corrections Officer Moon conducted a search.  (Id. at ¶ 3.)  The Plaintiff alleges that Corrections Officer Moon looked upset that he did not find any contraband in the cell but does not allege that Corrections Officer Armstrong did not find any contraband.  (See generally Doc 1 at ¶¶ 1-16.)  This failure is notable in that Corrections Officer Armstrong is later alleged to have returned carrying a knife, and Corrections Officer Leary (who was with Armstrong) is alleged to have told the Plaintiff that they needed to speak with him.  (Id. at ¶ 5.)

The Plaintiff alleges that he and his fellow cellmates were made to strip, squat, and cough in front of each other.  (Doc 1 at ¶ 4.)  The Plaintiff alleges that he reminded the Corrections Officers that he had a lawsuit against "them" (a blatant misrepresentation as this Court's own records – a proper subject of judicial notice – clearly demonstrate that Corrections Officer Moon was the only officer present who was a Defendant in Case No. 05-419).  (Id.; see also Exhibit A,

---

[2] The Complaint restarts its paragraph numbering with each section.  Unless stated otherwise, paragraph references are to the paragraph numbers in the Factual Allegations section of the Complaint.

Case Action Summary, <u>Bailey v. Ray Lee Bonin, et al.,</u> Case No. 1:05-cv-419-MHT-TFM.)[3]

The Plaintiff also alleges that he told the Corrections Officers that because of his ongoing lawsuit, that they were not to return unless they had a "sergeant/supervisor" with them – a nonsensical demand given that the earlier lawsuit included as defendants two sergeants, a commander, and the former-sheriff. (<u>Id.</u>) As the Complaint makes clear, the Plaintiff complied with the commands of the Corrections Officers during this first encounter, and no force was used against him or his cellmates. (<u>Id.</u> at ¶¶ 1-5.)

Corrections Officers Moon and Armstrong are alleged to have left the cell and returned ten minutes later with Corrections Officer Leary. (Doc 1 at ¶ 5.) Corrections Officer Armstrong allegedly had a "black knife" in his hand and Corrections Officer Leary requested that the Plaintiff come out of the cell and speak to the Corrections Officers. (<u>Id.</u>) The Plaintiff refused. (<u>Id.</u>) The Plaintiff repeated his nonsensical demand for a sergeant or supervisor. (<u>Id.</u>) Corrections Officer Moon repeated the request for the Plaintiff to come out of the cell and the Plaintiff again refused. (<u>Id.</u>) The Corrections Officers left without using any force in response to the Plaintiff's non-compliance. (<u>Id.</u>)

Ten minutes later, the same three Corrections Officers returned accompanied by Corrections Officers Chancey, Culbreth, Laney, Harrison, Phillips, and Jackson. (Doc 1 at ¶ 6.) The Corrections Officers had an active video camera. (<u>Id.</u> at ¶ 7.) Corrections Officer Leary opened the cell door and "asked" the Plaintiff to get on his knees. (<u>Id.</u>) The Plaintiff refused. (<u>Id.</u>) During this time, Corrections Officer Armstrong had a TASER activated and pointed at the Plaintiff. (<u>Id.</u>)[4] Corrections Officer Leary "advised" the Plaintiff for a second time to get on his

---

[3] In fact, none of the Defendants in the case at bar were Defendants in the Plaintiff's previous suit. (<u>Compare</u> Doc 1, <u>with</u> Exhibit A.)

[4] Corrections Officer Armstrong is the only jailer alleged to be armed with a TASER in the Factual Allegations. (Doc 1 at ¶ 1-16.) However, the Plaintiff alleges in various counts that other jailers used TASERs on the Plaintiff, so it is assumed for purposes of this motion that Corrections Officers Leary and Chancey also had TASERs. (Doc 1 at pp. 22-25.)

knees, and the Plaintiff again refused repeating his demand for a supervisor and noting that he was "restrained" while in his cell. (Id. at ¶ 8.)

The Plaintiff was "advised" for a third time to get on his knees and explicitly warned that he would be shot with the TASER if he did not comply. (Doc 1 at ¶ 9.) Despite the Plaintiff's alleged statement that he feared for his life, he again refused to comply and stated he was not coming out of the cell unless a sergeant was present. (Id.) The Plaintiff's allegations defy all credibility as he had already left the cell once without anything happening to him, and at that point he was not being ordered out of the cell. (Id. at ¶¶ 2, 9.)

The Plaintiff alleges that Corrections Officer Leary and Corrections Officer Moon smiled before "he" shot the Plaintiff with a TASER. (Doc 1 at ¶ 10.)[5] The Plaintiff fell and pulled the wires from the TASER. (Id.) Although not specifically alleged, it would appear the Plaintiff was able to pull the wires free as he alleges he ran out of the cell without touching an officer. (Id. at ¶ 11.) The Plaintiff then alleges "*[a]s BAILEY ran away from the officers* he turned around, with his hands up and was shot again in the leg." (Id.) (Bold and italicized emphasis added, all caps emphasis in the original.) The Complaint alleges that as the Plaintiff "went down" he was kneed in the back and head and received a further discharge from the TASER (presumably to his leg) and another discharge in his back. (Id.) Curiously, paragraph eleven contains no allegation that the Plaintiff was compliant or failing to resist after being shot with the TASER the second time. (Id.) The Plaintiff also does not inform the Court who it was that used the force described in paragraph eleven. (Id.)

The Plaintiff alleges that he was handcuffed and "shackled to the floor". (Doc 1 at ¶ 12.) From this point, the Plaintiff does not allege that any further force was used against him. (Id. at

---

[5] This allegation is particularly puzzling as even taking into account the Plaintiff's subsequent allegations in the Counts of his Complaint, nothing in the Complaint alleges that Corrections Officer Moon had a TASER. In fact, up until this point in the Complaint, only Corrections Officer Armstrong is alleged to have had a TASER. Consequently, counsel for the Defendants is left wondering who "he" was.

¶¶ 12-16.)  He does allege that about an hour later he was taken to Southeast Alabama Medical Center for removal of one TASER probe that remained in his leg.  (Id. at ¶ 12.)  He alleges that during the trip an unnamed transport officer told him his leg would probably fall off.  (Id. at ¶ 13.)  The Plaintiff alleges that he reported the comment to Sgt. Bonnin upon his return to the jail, but Sgt. Bonnin only laughed and told the Plaintiff to shut up.  (Id.)

The Plaintiff alleges that he was placed in a cell without a toilet, sink, water, or food for approximately eight hours.  (Doc 1 at ¶ 13.)  Curiously, the Plaintiff alleges in the factual allegations only that he was placed in the cell – he does not allege who did it.  (Id.)  It is not until Count XIV that he alleges Houston County, Sgt. Buchmann, Sgt. Jones, Sgt. Reynolds, Corrections Officer Leary, Corrections Officer Armstrong, Corrections Officer Chancey, Corrections Officer Culbreth, Corrections Officer Laney, Corrections Officer Harrison, and Corrections Officer Phillips placed him in the cell.  According to the Plaintiff, therefore, it took Houston County, three sergeants, and seven Corrections Officers to put him in the "closet cell".  (Id. at pp. 36-37.)

The Court should note the timing of the Plaintiff's allegations.  The initial encounter with the Plaintiff began at 10:54 p.m. on August 13, 2008.  As alleged, there was a cell and inmate search, a ten-minute break, a short conversation followed by another ten-minute break, and an altercation followed by a trip to the hospital an hour later.  (Id. at ¶¶ 1-13.)  The only reasonable inference is that the Plaintiff was asleep for that period as he would have been placed in the cell in the very early morning hours of August 14, 2008.  Notably, the Plaintiff does not allege that he requested food, water, or toilet facilities during this period.  (Id. at ¶¶ 1-16.)

The Plaintiff alleges that he was subsequently returned to Holman Prison.  (Doc 1 at ¶ 14.)  Allegedly, Sheriff Hughes and Sgt. Buchmann sent a letter requesting that DOC discipline the Plaintiff – apparently for the incident on August 13, 2008.  (Id.)  The Complaint alleges that

5

the Plaintiff was not disciplined.  (Id.)  This is the only allegation in the Factual Allegations about Sheriff Hughes.  (Id. at ¶¶ 1-16.)

In the Counts portion of the Complaint, the Plaintiff adds some additional allegations with respect to these Defendants.  They are alleged to have decided to purchase TASERs for use in the jail.  (Doc 1 at pp. 26-30.)  The Plaintiff alleges that the jail was overcrowded, resulting in him sleeping on the floor.  (Id. at pp. 30-31.)  The Plaintiff alleges that these Defendants knew or should have known of the alleged overcrowding but provides no specific factual allegations to support these conclusory allegations.  (Id.)

The Complaint is notable for what it does not allege.  Sgt. Jones and Sgt. Reynolds are not mentioned at all in the factual allegations of the Complaint.  They are referenced in the caption, the Parties section, and the Counts.  However, nowhere in the Complaint are there any specific factual allegations against them outside of those referenced in the immediately preceding paragraph.  Specifically, they are not alleged to have been present during the August 13, 2008 incident, or had any foreknowledge that it would occur.

With respect to Sgt. Buchmann, the Complaint does not allege that she was actually present or even had actual knowledge of the cell search and eventual extraction.  In fact, the Complaint appears to allege that Sgt. Buchmann was not even aware of the search in its assertion that "Sgt, [sic] Buchmann *purportedly* directed Officers Moon and Armstrong to conduct a single cell search for contraband."  (Doc 1 at ¶ 1.)  All she is specifically alleged to have done was sent a letter to the Alabama Department of Corrections with the Plaintiff in an attempt to have them punish the Plaintiff for his behavior on August 13, 2008.  Finally, the Plaintiff does not allege that he has returned to the Houston County Jail in the two years following the incident or that he will return there any time in the future.[6]  (Id.)

---

[6] Nor can he and survive a Rule 11 motion unscathed as the Plaintiff is serving life without the possibility of parole

6

**STANDARD OF REVIEW**

The United States Supreme Court has rejected the "no set of facts" standard for determining the sufficiency of a complaint challenged by a Rule 12(b)(6) motion. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) (overruling Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).[7]   Regarding Conley, the Supreme Court noted that the "no set of facts" language had been essentially taken out of context for fifty years. 550 U.S. at 562-63. On "a focused and literal reading of Conley's 'no set of facts,' a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Id. at 562. Instead, the Twombly Court held that

> this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: ***once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint***.

550 U.S. at 563 (emphasis added).

What a complaint needs, in the Twombly Court's view, is facts. As a general rule, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . ." 550 U.S. at 555. However, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Id. (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." Id.

Even under Rule 8(a) there must be a "'statement of circumstances, occurrences, and events in support of the claim presented' and . . . not . . . a pleader's 'bare averment that he wants

---

in Holman Prison.

[7] See also Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005); O'Brien v. DiGrazia, 544 F.2d 543, 546, n.3 (C.A. 1 1976) ("[W]hen a plaintiff . . . supplies facts to support his claim, we do not think that Conley imposes a duty on the courts to conjure up unpleaded facts that might turn a frivolous claim of unconstitutional . . . action into a substantial one"); McGregor v. Industrial Excess Landfill, Inc., 856 F.2d 39, 42-43 (C.A. 6 1988) (quoting O'Brien's analysis).

relief and is entitled to it.'"  Twombly, 550 U.S. at 555 (citations omitted).  "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing only 'fair notice' of the nature of the claim but also 'grounds' on which the claim rests."  Id. (citations omitted).  Furthermore, "[p]leadings must be something more than an ingenious academic exercise in the conceivable."  Marsh v. Butler County, 268 F.3d 1014, 1037 (11th Cir. 2001) (en banc).  Unsupported conclusions of law or of mixed law and fact are not sufficient to withstand dismissal under Rule 12(b)(6).  Marsh, 268 F.3d at 1036 n.16; see also South Florida Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996) (noting "as a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss").

When, as in the instant case, a plaintiff brings 42 U.S.C. § 1983 claims and a defendant official asserts qualified immunity, the Plaintiff's factual pleading burden is heightened even further.  GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998); Epps v. Watson, 492 F.3d 1240, 1242 (11th Cir. 2007).  It is the Plaintiff's burden to allege sufficient specific supporting facts or face dismissal of his claims.  Marsh, 268 F.3d at 1036 n.16; Montalvo, 84 F.3d at 408 n.10.

Recently, however, a *panel* of the Eleventh Circuit held that it had the authority – in contravention of established Eleventh Circuit rules – to overrule the heightened pleading standard.  Randall v. Scott, 610 F.3d 701 (11th Cir. June 30, 2010).  Eleventh Circuit rules explicitly forbid a panel from overturning the decision of another panel.  United States v. Smith, 122 F.3d 1355, 1359 (11th Cir.1997) (per curiam). "While an intervening decision of the Supreme Court can overrule the decision of a prior panel of our court, the Supreme Court decision must be clearly on point."  Garrett v. Univ. of Ala. at Birmingham Bd. of Trs., 344 F.3d 1288, 1292 (11th Cir. 2003) (per curiam).  Nonetheless, the Randall panel found that a United

States Supreme Court case – that did not mention the heightened pleading standard even in *dicta* – "effectively overturned" the Eleventh Circuit's heightened pleading precedent, and asserted that as the authority to overturn the heightened pleading standard.  Randall, 610 F.3d at 708-710 (discussing Ashcroft v. Iqbal, 556 U.S. ----, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

For purposes of preserving the issue, these Defendants assert that the heightened pleading standard remains applicable and ***must*** be applied to 42 U.S.C. § 1983 cases involving qualified immunity or the principles underlying qualified immunity and the very purpose of the immunity (protecting government officials from vexatious litigation and allowing them to do their jobs without fear of devastating financial consequences) will be destroyed.

## ARGUMENT

The Complaint contains a paucity of factual allegations respecting Sgt. Buchmann, and practically none with respect to Sgt. Jones and Sgt. Reynolds.  The Plaintiff's claims against these Defendants are due to be dismissed for three reasons.  First, because the Plaintiff was a convicted inmate, his Fourteenth Amendment claims are due to be dismissed.  Second, in their individual capacities, these Defendants are entitled to qualified immunity.  In their official capacities, these Defendants are not "persons" for purposes of any 42 U.S.C. § 1983 claims for money damages, and the Plaintiff lacks standing to pursue claims for equitable relief.  Finally, because the Plaintiff's claims against Sgt. Jones and Sgt. Reynolds are clearly frivolous, these two Defendants request that the Court enter an order granting them attorneys' fees and costs under 42 U.S.C. §1983.

## I.   THE PLAINTIFF'S FOURTEENTH AMENDMENT CLAIMS ARE DUE TO BE DISMISSED

Whether the Plaintiff was a pretrial detainee or convicted prisoner determines which constitutional amendment is applicable.  The Eighth Amendment contains the rights of convicted prisoners while the Fourteenth Amendment's Due Process Clause governs the rights of pretrial

detainees.  Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996).  The analysis under either amendment is the same.  Hamm v. DeKalb County, 774 F.2d 1567, 1574 (11th Cir. 1985).  However, the Plaintiff cannot maintain claims under both amendments.  Cottrell, 85 F.3d at 1490.

While the Plaintiff attempts to have it both ways, he clearly cannot.  The Plaintiff alleges that he was "taken back" to Holman prison.  (Doc 1 at ¶ 14.)  These allegations clearly indicate the Plaintiff was a convicted prisoner.  Accordingly, he cannot maintain Fourteenth Amendment claims.  Cottrell, 85 F.3d at 1490.  Therefore, the Plaintiff's Fourteenth Amendment claims are due to be dismissed.  Id.

## II.   SERGEANTS BUCHMANN, JONES AND REYNOLDS ARE ENTITLED TO QUALIFIED IMMUNITY IN THEIR INDIVIDUAL CAPACITIES.

The Plaintiff's federal individual capacity claims fail against these Defendants as a matter of law because they are entitled to qualified immunity.  "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Once determined that a defendant acted within his discretionary authority, courts use a two-part test to determine whether qualified immunity is proper.  In Saucier v. Katz, the Supreme Court directed courts to use the following two-part test to determine whether qualified immunity applies: first, the court determines whether there was a constitutional violation; second, the court determines whether the constitutional right in question was clearly established at the time of the alleged violation of the right.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Recently, however, the Court abandoned the rigid order of analysis enunciated in Saucier and held that courts are no longer required to first determine whether there was a constitutional violation.  Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 818 (2009).

10

On reconsidering the procedure required in Saucier, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

Pearson, 129 S. Ct. at 818.

A.    Sergeants Buchmann, Jones and Reynolds Acted Within Their Discretionary Authority.

Once a public official has asserted the defense of qualified immunity, he bears the burden of proving that he was acting within his discretionary capacity. Rich v. Dollar, 841 F.2d 1558, 1563 (11th Cir. 1988). In order to establish that he is acting within his discretionary capacity, a public official asserting qualified immunity need only show "objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." Id. at 1564 (quoting Barker v. Norman, 651 F.2d 1107, 1121 (5th Cir. 1981)). Courts should not be "overly narrow" in interpreting this requirement. Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994). To determine this question "a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." Harbert Intern., Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998) (citation omitted). As one district court observed, "the determination that an officer was acting within his discretionary authority is quite a low hurdle to clear." Godby v. Montgomery County Bd. of Educ., 996 F. Supp. 1390, 1401 (M.D. Ala. 1999).

In the instant case, Sergeants Buchmann, Jones and Reynolds acted within their discretionary authority. It is only by virtue of their respective positions as sergeants in the Houston County Jail that they have any authority to supervise Corrections Officers and inmates or purchase equipment. It cannot reasonably be argued that these duties are unrelated to the

11

duties of a corrections supervisor.  These Defendants easily clear the low hurdle of establishing that they acted within their discretionary authority.  James, 157 F.3d at 1282.

**B.      Sergeants Buchmann, Jones, and Reynolds Did Not Violate the Plaintiff's Federally Protected Rights.**

The Complaint does not allege any facts from which it could be determined these Defendants violated the Plaintiff's rights.  The Plaintiff's claims against these Defendants are found in Counts I, II, III (Sgt. Buchmann only), IV, VI (Sgt. Buchmann and Sgt. Jones only), IX-XI, XIV.  Counts I, IX, and X appear to be based on the purchase and issuance of TASERs in the Houston County Jail.  Counts II and VI allege these Defendants used excessive force on the Plaintiff or failed to protect him.  Count III alleges an illegal strip search claim.  Count IV alleges these Defendants violated the Plaintiff's First Amendment rights by retaliating against him following his filing of his first lawsuit.  Count XI alleges that the Plaintiff's Eighth Amendment rights were violated due to overcrowding conditions in the jail.  Count XIV alleges that the Plaintiff's Eighth Amendment rights were violated when he was placed in a "closet cell".

None of these Counts state a claim against these Defendants.  First, to the extent the Plaintiff's Complaint attempts to impose vicarious liability on these Defendants, such claims fail as a matter of law.  Second, the Plaintiff's excessive force, strip search, and retaliation, claims fail because there are no facts supporting that these Defendant participated or ordered such actions.  Third, the conditions claims (overcrowding, "closet cell", and sleeping near a toilet) fail as a matter of law as the facts alleged do not show the Plaintiff's rights were violated.  Fourth, the Plaintiff's claims with respect to the TASERs fail as a matter of law because the Eleventh Circuit and other federal courts have clearly upheld their use.  Finally, to the extent the Plaintiff's Complaint could be construed or amended to include supervisory liability claims, those claims fail as a matter of law in light of recent pronouncements of the United States Supreme Court.

### 1.    1983 claims cannot be premised on *respondeat superior*.

To the extent that Plaintiff's claims against Sergeants Buchmann, Jones, and Reynolds are an attempt to hold them vicariously liable, his claims fail as a matter of law. Neither the express language of § 1983 nor the holdings of the United States Supreme Court support liability on this basis.

42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, ***subjects, or causes to be subjected***, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

(Emphasis added.) The language of the statute requires that there be a direct causal link between plaintiff and the actions of a putative defendant. Merely employing an individual who causes harm is insufficient to invoke the remedy of this statute. The United States Supreme Court addressed this exact issue and adopted this holding over 30 years ago. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S. Ct. 2018 (1978).

### 2.    Sergeants Buchmann, Jones, and Reynolds did not use excessive force, fail to protect, strip search the Plaintiff, retaliate against him.

As noted previously, the Plaintiff has alleged that these Defendants used excessive force against him, failed to protect him, strip-searched him (or failed to protect him from it), and retaliated against him for filing a previous lawsuit. (Doc 1 at Counts II-IV, VI.) The problem for the Plaintiff is that these are direct participation claims and ***nowhere*** in the Complaint does the Plaintiff allege that these Defendants were present during the cell search or the cell extraction. There are no allegations that these Defendants used force of any kind on the Plaintiff. There are no allegations that these Defendants were present and in a position to intervene during

13

either the use of force or the strip search – absolute prerequisites under a failure to protect theory. Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir. 1998).

The only specific allegation the Plaintiff makes is against Sgt. Buchmann.  The Plaintiff alleges that the order to "conduct a single cell search for contraband" "purportedly" came from Sgt. Buchmann.  However, the Complaint does not allege that Sgt. Buchmann ordered a strip search of the inmates – in fact, it does not appear to actually aver that Sgt. Buchmann in fact ordered the cell search.  (Doc 1 at ¶ 1.)

Therefore, for purposes of Count III, the Complaint does not allege that Sgt. Buchmann ordered a strip search – let alone ordered Corrections Officer Moon to make comments – or was even present when the alleged strip search occurred.  There are no facts alleged in the Complaint from which it could be inferred that Sgt. Buchmann was aware a strip search was going to occur, or if one did, that it would be carried out in the manner alleged.  Consequently, the Plaintiff has failed to allege a constitutional violation against Sgt. Buchmann in Count III as well.

To prevail on a First Amendment retaliation claim, the Plaintiff's Complaint must contain facts to support three elements:  (1) his speech was constitutionally protected; (2) he suffered an adverse action that would deter an average person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the alleged retaliatory action and the protected speech.  Smith v. Mosely, 532 F.3d 1270, 1276 (11th Cir. 2008).  For purposes of the instant motion, these Defendants concede the Complaint alleges the first two elements. However, it fails to allege facts supporting the third element – the Plaintiff has not alleged a causal connection.

The Court should note that none of these Defendants were defendants in the Plaintiff's earlier lawsuit.  Consequently, they had no cause to retaliate against the Plaintiff.  In fact, it would appear that even the Plaintiff did not think they would retaliate as he specifically

demanded that one of them come to his cell.  (Doc 1 at ¶ 4.)  The Plaintiff has not alleged any facts that would indicate that anyone other than Corrections Officers Moon and Armstrong would have been aware of the first lawsuit.  (Id.)

Even if they had a reason, the Complaint contains no allegations that either Sgt. Jones or Sgt. Reynolds did anything to him at all other than join the eight other individuals and Houston County in placing him in the "closet cell".  However, the Plaintiff does not assert in Count IV that placing him in the cell was part of the alleged retaliation.  Consequently, the Plaintiff has utterly failed to make out a retaliation claim against either Sgt. Jones or Sgt. Reynolds.  Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir. 1989) (requiring that a plaintiff allege that actions were taken because of the plaintiff's speech).

With respect to Sgt. Buchmann, Count IV alleges that the retaliatory acts consisted of searching the Plaintiff's cell twice, forcing the Plaintiff to expose himself in front of other inmates, tasing him, and wrestling him to the ground.  (Doc 1 at pp. 20-21.)  As noted previously, the Complaint does not allege that Sgt. Buchmann personally participated in any of these acts – the Complaint does not allege, even vaguely, that Sgt. Buchmann ordered a strip search or even the eventual cell extraction.  The Complaint specifically appears to cast doubt on whether Sgt. Buchmann even ordered the initial cell search.

Even if the Court construes the Complaint as alleging that Sgt. Buchmann ordered the initial search, the Complaint does not allege – even in conclusory fashion – that there was no justification for the search.  In fact, the Plaintiff specifically alleges the search was for contraband.  Additionally, there is a temporal problem for the Plaintiff – the order to search the Plaintiff's cell came over three years after the Plaintiff filed suit, and there are no allegations that any other incidents had occurred.  Consequently, the Plaintiff has failed to establish a causal

15

connection between the order to search and the Plaintiff's lawsuit. Wildberger, 869 F.2d at 1468.

The allegations regarding the reason for the search order also creates a problem for the Plaintiff. It cannot be plausibly argued that a supervisory corrections officer who had knowledge of contraband in a cell would not order the cell searched. Therefore, even if the Plaintiff could establish a causal connection between Sgt. Buchmann ordering the search and the Plaintiff's first lawsuit, his retaliation claim still fails. See Smith v. Mosely, 532 F.3d 1270, 1278 (11th Cir. 2008) (stating that there is no retaliation where officers would have taken the allegedly retaliatory action despite the protected speech)

### 3. The Plaintiff's rights were not violated by the alleged overcrowded conditions, placement in the "closet cell", or sleeping near a toilet.

The Plaintiff's conditions of confinement claims are due to be dismissed. The Plaintiff alleges that he was subjected to overcrowding conditions which required him to sleep on the floor two feet away from a toilet. As an initial matter, the Plaintiff's allegations do not support an inference that the jail was overcrowded. The Complaint provides no facts with respect to the capacity of the jail, the number of inmates on the day complained of, the conditions of the bunks, or any other facts that would support such a finding. At best, all that can be safely said is that there were more people in the Plaintiff's cell than there were bunks.

Even if such an inference could be gleaned from the facts alleged, overcrowding is not per se constitutionally deficient. This is true even when it requires inmates to sleep on the floor. See, e.g., Fischer v. Ellgood, 328 Fed. App'x 428 (11th Cir. 2007) (finding that a showing of overcrowded cells with inmates sleeping on the floor did not rise to the level of deliberate indifference); Alfred v. Bryant, 2010 WL 1881064 (11th Cir. 2010) (finding that requiring an inmate to sleep in a cell *without a mattress* for eighteen days did not violate the Eighth Amendment). Double-celling that provides even less than fifty square feet per inmate has also

been found to not violate the Constitution.  Rhodes v. Chapman, 45 U.S. 337, 348-49 (1981) (holding that double-celling in a small cell that required two inmates to share sixty-three square feet was not unconstitutional).

Rhodes (along with a bit of common sense) demonstrates why the Plaintiff's placement in the so-called "closet cell" is not a constitutional violation.  A sixty-three square feet cell is a little less than eight feet wide by eight feet long.  The Rhodes Court found that *two* prisoners could constitutionally share this space.  This equates to roughly a 4 foot by 4 foot space per prisoner – about the size of a walk-in closet.

As noted in the facts, the time the Plaintiff was placed in the smaller cell coincides with normal sleeping hours.  Even the duration coincides with the normal eight hour recommended sleep cycle.  The undersigned is aware of no case law that requires jails to serve food during early morning hours, or upon the demand of an inmate.  See, e.g., Harris v. Thigpen, 941 F.2d 1495, 1511 (11th Cir. 1991) (stating "[t]he Constitution does not require that prisoners, as individuals or as a group, be provided with any and every amenity which some person may think is needed to avoid mental, physical, and emotional deterioration.")  Notably, the Plaintiff does not allege that he sought water or asked to use the toilet.  Nothing in the Complaint suggests that the Plaintiff was placed in the cell as punishment or that he suffered any deprivation while in the cell.  Had the Plaintiff been placed in a hotel room with kitchenette during this time, he would likely have slept through it.

The Plaintiff also alleges his original cell's conditions were unconstitutional as he was made to sleep on the floor two feet away from the toilet.  After a diligent search, the undersigned was unable to find any case law holding that sleeping within two feet of a toilet, on a bunk or on a mat on the floor, was unconstitutional.  What the undersigned did discover were cases in which federal courts have held that the Constitution was not violated when actual waste was present – a

17

condition not alleged by the Plaintiff in the case at bar. See, e.g., Sturdivant v. Lovette, 2009 WL 3415368, *15 (S.D. Ala. 2009); Smith v. Copeland, 87 F.3d 265, 268 (8th Cir. 1996). At best, the Plaintiff's claim is that he was forced to sleep with his feet two feet from a functioning toilet.[8] This simply cannot be said to fall below "the minimal civilized measure of life's necessities" – the standard by which Eighth Amendment conditions claims are judged. Rhodes, 452 U.S. at 357. No court has found this condition to be constitutionally deficient, and this Court should not be the first.

As a final note on the Plaintiff's conditions claims, the Court should note that he does not allege any injury from sleeping on the floor of his original cell or being placed in the "closet cell". He suffered no deterioration, illness, or physical injury from these conditions. Marsh, 268 F.3d at 1028 ("[a] plaintiff must also show that the constitutional violation caused his injuries."). "While an inmate 'need not await a tragic event' before seeking relief, . . . he must at the very least show that a condition of his confinement 'pose[s] an unreasonable risk of serious damage to his future health' or safety . . ." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (citations omitted). The allegations in the Plaintiff's Complaint do not meet this threshold requirement, and should therefore result in the dismissal of the Plaintiff's conditions claims.

### 4. TASERs are constitutional as a matter of law.

In Counts I, IX, and X, the Plaintiff alleges that these Defendants violated his federally protected rights by purchasing and issuing TASERs. At the outset, the Plaintiff has failed to allege any facts that would support a finding that mid-level supervisors like these Defendants would be involved in a weapons selection/purchasing decision – such decisions usually rest with the sheriff or Commander for Jail Operations. Nonetheless, the Plaintiff's claims are clearly frivolous as case after case has upheld the use of TASERs. See, e.g., Draper v. Reynolds, 369

---

[8] The Complaint does not allege that the Plaintiff was forced to sleep with his head near the toilet.

F.3d 1270, 1278 (11th Cir. 2004) (single one time shocking with a TASER not a constitutional violation); Burkett v. Alachua County, 250 Fed. Appx. 950, 952-53 (11th Cir. 2007) (no constitutional deprivation where Corrections Officers used TASER on mentally ill inmate); Mann v. Taser Intern., Inc., 588 F.3d 1291, 1306 (11th Cir. 2009) (finding no excessive force where handcuffed and shackled arrestee was tased three times); Forrest v. Prine, 620 F.3d 739, 745 (7th Cir. 2010); Lewis v. Downey, 581 F.3d 467, 477-78 (7th Cir. 2009) ("In a jail or prison setting, it is not hard to imagine any number of scenarios that would justify the [use of] ... taser guns."); Michenfelder v. Sumner, 860 F.2d 328, 336 (9th Cir. 1988) (policy of allowing use of taser guns on inmate who refuses to submit to a strip search does not constitute cruel and unusual punishment); Caldwell v. Woodford County, 968 F.2d 595, 600-01 (6th Cir. 1992) (use of stun gun and straight jacket on inmate who refused to obey Corrections Officers' orders did not violate Eighth Amendment); Cowart v. Smith, 2009 WL 3135011, *8 (M.D. Ala. 2009) (finding Corrections Officer did not use excessive force when tasing an inmate).

The Court should also note that the Plaintiff's requested injunctive relief flies in the face of his claims regarding TASERs. Specifically, the Plaintiff requests that the Court enter an injunction requiring the Defendants to "set in place strict guidelines for the use of tasers." (Doc 1 at p. 39.) If TASERs are unconstitutional, no guidelines or policies could be set.

In light of this crystal clear authority from the Eleventh Circuit, Sixth Circuit, Seventh Circuit, and Ninth Circuit, as well as decisions of this Court, the Plaintiff's claims that the purchase and use of TASERs is unconstitutional is frivolous.

          **5.**      **The Plaintiff cannot maintain supervisory claims against these Defendants.**

The Plaintiff cannot maintain supervisory liability claims against Sergeants Buchmann, Jones, and Reynolds for two reasons. First, recent federal appellate decisions cast doubt on

19

whether such claims can be brought under 42 U.S.C. § 1983. Second, even under the old standard, the instant Complaint fails to make out supervisory liability claims.

### a.        Supervisory liability no longer exists.

The United States Supreme Court appears to no longer recognize "supervisory liability" claims in § 1983 suits. In Ashcroft v. Iqbal, the Supreme Court concluded that because there is no *respondeat superior* liability under § 1983 or the Bivens doctrine, the term "supervisory liability" is a misnomer. 129 S. Ct. 1937, 1949 (2009). Without discussing previous circuit court precedent, the Court held that supervisors cannot be found liable based upon their knowledge and acquiescence in their subordinates unconstitutional conduct. Iqbal, 129 S. Ct. at 1949. "In a § 1983 suit . . . – where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Id. In other words, a supervisory official, like any other governmental official, may only be held liable for his or her own conduct resulting in a violation of a plaintiff's federally protected right. Thus, pursuant to Iqbal, the Plaintiff's claims against Sheriff Hughes and Commander Reed – to the extent they rely on supervisory liability – are due to be dismissed.

Despite the Court's holding in Iqbal, the issue of whether Iqbal is an absolute bar to supervisory § 1983 claims appears to be unsettled in the Eleventh Circuit. See Gross v. White, 340 F. App'x 527, 531 (11th Cir. 2009) (demonstrating the Eleventh Circuit, post-Iqbal, applying the standard for supervisory liability set out in Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003)).[9] While the Eleventh Circuit has not addressed the issue, the Ninth Circuit has concluded that Iqbal indeed bars supervisory liability claims. Simmons v. Navajo County, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (holding that "to survive summary judgment, the [plaintiffs] must

---

[9] Although Gross applies Cottone post-Iqbal, the Eleventh Circuit did not reject or distinguish Iqbal.

adduce evidence that [the supervisory defendants] themselves acted or failed to act unconstitutionally, not merely that a subordinate did").

Additionally, the First, Third, and Tenth Circuits have expressed doubt over whether even a limited form of supervisory liability exists post-Iqbal.  See Arocho v. S. Nafziger, 367 F. App'x 942, 947 (10th Cir. 2010) (stating that post-Iqbal "supervisory liability itself may no longer be tenable"); Bayer v. Monroe County Children and Youth Servs., 577 F.3d 186, 191 n.5 (3d Cir. 2009) (stating the district court may have erred in its determination that a genuine issue of fact existed regarding whether a supervisor had knowledge of a constitutional violation as post-Iqbal, "it is uncertain whether proof of such personal knowledge, with nothing more would provide a sufficient basis for holding [a supervisor] liable"); Maldonado v. Fontanes, 568 F.3d 263, 275 n.7 (1st Cir. 2009) (noting that "recent language from [Iqbal] may call into question our prior circuit law on the standard for holding a public official liable for damages under § 1983 on a theory of supervisory liability").  Thus, should this Court determine that Iqbal indeed bars supervisory liability, it would conform with Iqbal and not violate Eleventh Circuit precedent.

### b.   The Complaint does not allege plausible supervisory liability under the Cottone standard.

Irrespective of whether Iqbal bars supervisory liability claims, Plaintiff's claims are due to be dismissed under the Cottone standard.  As discussed previously, the Complaint does not aver that Sergeants Jones or Reynolds personally participated in any of the alleged constitutional violations, and all Sgt. Buchmann is alleged to have done is possibly ordered the initial cell search and sent a letter to DOC.  Consequently, if the Complaint alleges anything against these Defendants, it must be based upon supervisory liability.  See Marsh, 268 F.3d at 1035 (observing that in the absence of allegations of personal involvement, "[t]he Sheriff's potential liability. . . can be only policymaker liability").

21

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). "Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Cottone, 326 F.3d at 1360. A plaintiff can establish a causal relationship between a supervisory official's acts and the acts of his subordinates in the three following ways: (1) the supervisor had notice of a widespread history of abuse which he neglected to correct, Gonzales v. Reno, 325 F.3d, 1228, 1234 (11th Cir. 2003); Cottone, 326 F.3d at 1360; (2) the supervisor implemented a custom or policy that resulted in deliberate indifference to constitutional rights, Gonzales, 325 F.3d at 1234-35; Cottone, 326 F.3d at 1360; or (3) the facts support "the inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Gonzalez, 325 F.3d at 1235.

Here, the Complaint does not contain any factual allegations that would support liability on any of the Cottone prongs. The Complaint contains no allegations of any policy other than that of allowing TASERs to be used in the jail. Furthermore, "[a] *plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity*." Colle v. Brazos County, 981 F.2d 237, 245 (5th Cir. 1993) (emphasis added). As discussed above, such a policy is constitutional as a matter of law. There are no allegations anywhere in the Complaint that Sergeants Jones or Reynolds directed the cell search or extraction or even knew that these events were occurring until after it was over. At best, Sgt. Buchmann only ordered the initial search and was not aware of how the search was eventually carried out.

The Plaintiff has also failed to allege facts supporting a finding that there was a widespread history of abuse or neglect.  To be sure, the Plaintiff alleges that he had previously file suit related to being strapped in a restraint chair for a prolonged period of time.  However, the Plaintiff has alleged no facts that would show these Defendants were aware of the incident or the Plaintiff's lawsuit.[10]  Additionally, the Court should note the Plaintiff's first lawsuit involved the use of a restraint chair – it did not involve claims like those in the instant case.  Even if they were similar, a single incident is insufficient as a matter of law to establish a widespread history of abuse.  City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985).  In order to constitute widespread abuse, the deprivations must be "*obvious, flagrant, rampant and of continued duration rather than isolated occurrences*."  Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (emphasis added).  Accordingly, the Plaintiff has failed to allege valid supervisory liability claims – even if such claims remain valid after Iqbal.

### C.  No clearly established law provided "fair warning".

The Plaintiff must show that clearly established law provided Sergeants Buchmann, Jones and Reynolds with fair warning that their conduct was unlawful by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law.  Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted).  The Eleventh Circuit has identified the latter method as an "obvious clarity" case.  Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted).  In order to show that the conduct of the Defendants was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent."  Willingham v. Loughnan, 261 F.3d 1178, 1187-88 (11th Cir. 2001).  "Unless a government

---

[10] As noted, none of these Defendants were defendants in the Plaintiff's first lawsuit, and the Plaintiff only alleges that he "reminded" Jailer Moon (who was a defendant in the first lawsuit) and Jailer Armstrong.

23

agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

Given the utter lack of specific factual allegations contained in the Complaint that would support either direct or supervisory liability, the task of finding a case with materially similar facts is nearly impossible. The undersigned are unaware of any case that has upheld liability against supervisors who did not participate, order, or draft policies that permitted a constitutional violation. The closest the Plaintiff comes to making such a claim are his TASER purchase/use claims. Even if this Court were to decide to become the first in the Eleventh Circuit to declare the use of TASERs to be unconstitutional, these Defendants would still be entitled to qualified immunity in light of the case law existing at the time of the alleged violation that held to the contrary. Draper, 369 F.3d at 1278; Burkett, 250 Fed. Appx. at 952-53.

Consequently, the best the Plaintiff can attempt to show on the present record is that this is an obvious clarity case. However, as demonstrated previously, the lack of facts cuts against the Plaintiff's ability to make such a showing. In fact, the case law tends to show the exact opposite. Consequently, because the Plaintiff cannot meet his second qualified immunity burden, his claims against Sergeants Buchmann, Jones, and Reynolds are due to be dismissed.

## III.    THE PLAINTIFF'S OFFICIAL CAPACITY CLAIMS ARE DUE TO BE DISMISSED.

The Plaintiff's official capacity claims are due to be dismissed for three reasons. First, to the extent the Plaintiff seeks money damages from Sergeants Buchmann, Jones, and Reynolds in their official capacities, money damages are not available under 42 U.S.C. §1983 for official capacity claims. Second, the Plaintiff lacks standing to obtain the requested equitable relief. Finally, the Plaintiff cannot satisfy the requirements for obtaining equitable relief.

### A.   The Plaintiff's Official Capacity Claims are Barred by Eleventh Amendment Immunity and the Definition of a "Person" Under 42 U.S.C. § 1983.

The Plaintiff's claims against these Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction; as such claims are barred by the Eleventh Amendment to the United States Constitution. Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, 916 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (sheriff entitled to Eleventh Amendment immunity).

In addition, the official capacity claims must fail because 42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution. 42 U.S.C. § 1983 (emphasis added). The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Any official capacity claims against Sergeants Buchmann, Jones, and Reynolds should therefore be dismissed because they are not "person[s]" under § 1983. Id.; Carr, 916 F.2d at 1525 n.3.

### B.   The Plaintiff Lacks Standing.

The Plaintiff seeks to have the Court order the Defendants to promulgate strict guidelines on TASER use and forbid even carrying such weapons around him. (Doc 1 at p. 39.) The Plaintiff has failed to allege facts that would grant him standing to seek such relief. Specifically, the Plaintiff has not alleged that he is being held in the Houston County Jail.[11] In fact, he

---

[11] Nor can the Plaintiff make such an allegation and survive a Rule 11 Motion as he and his attorney know that he is currently serving life without parole at Holman Prison.

specifically has alleged that he was returned to Holman Prison shortly after the incident complained of.  (Doc 1 at ¶ 14.)

A plaintiff seeking the jurisdiction of the federal courts must show a personal stake in the outcome.  Baker v. Carr, 369 U.S. 186, 204 (1962).  The plaintiff must have sustained, or is about to sustain, some direct injury.  Golden v. Zwickler, 394 U.S. 103, 109-110 (1969).  Of direct relevance to the present case, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."  O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974).

In City of Los Angeles v. Lyons, the plaintiff alleged that he had been subjected to a chokehold by arresting officers in violation of his federally protected rights.  461 U.S. 95, 97 (1983).  The plaintiff sought an injunction barring the future use of police chokeholds.  Id. at 98. After the Ninth Circuit affirmed the district court's grant of a preliminary injunction, the United States Supreme Court reversed, holding that the plaintiff lacked standing.  Id. at 99-100.  The Court stated that the plaintiff's standing rested solely on pure speculation that he might be stopped by the police, might be arrested, and might be subjected to another chokehold.  Id. at 108.  The court noted that five months elapsed between the choking incident and the filing of the complaint and the plaintiff was not subjected to another chokehold.  Id.

The Plaintiff in the instant case is in the same position as the plaintiff in Lyons.  Any request for equitable relief rests solely on speculation that he might return to the Houston County Jail, might again refuse to follow orders, and might again have to be tased in order to get him under control.  Such speculation into future conduct, even if it did violate the Plaintiff's rights, does not afford them standing to seek equitable relief against these Defendants in their official capacities.  Lyons, 461 U.S. at 108.

**A.     The Plaintiff Cannot Assert Facts to Support the Court Granting Equitable Relief.**

The Plaintiff must satisfy three elements to justify injunctive or other equitable relief against these Defendants.  First, he must succeed on the merits (in this context, he must show an actionable wrong).  Second, he must show the existence of a continuing irreparable injury.  Finally, he must prove that he has no other adequate relief at law.  Newman v. State of Alabama, 683 F.2d 1312, 1319 (11th Cir. 1982).  The Plaintiff cannot establish any of these elements.

First, the Plaintiff cannot show an actionable injury caused by Sergeants Buchmann, Jones, and/or Reynolds.  As set forth above, the Plaintiff has not pled any facts from which the Court could conclude that any of these Defendants committed an actionable wrong.  However, even if the Complaint could be construed as making out an actionable wrong committed by these Defendants, it does not contain allegations establishing the second element.  In particular, there is no continuing irreparable injury.  The Plaintiff alleges that he was returned to prison and has not alleged that he has returned to Houston County since sometime in August 2008 – roughly two and one-half years ago.  (See generally Doc. 1.)

Finally, the Plaintiff cannot realistically argue that he has no adequate remedy at law.  The Plaintiff has brought individual capacity claims for money damages against all of the Defendants.  Moreover, Sergeants Buchmann, Jones, and Reynolds's entitlement to qualified immunity does not deprive him of an adequate remedy.  See Rittenhouse v. DeKalb County, 764 F.2d 1451, 1459 (11th Cir. 1985).  It is sufficient that the Plaintiff has the opportunity to adjudicate the question.  Id.  Accordingly, because the allegations fail to establish the elements necessary to obtain an injunction or other equitable relief, Sergeants Buchmann, Jones, and Reynolds, in their official capacities, are entitled to a dismissal of the Plaintiff's official capacity § 1983 claims as a matter of law.

**IV.   SERGEANTS JONES AND REYNOLDS ARE ENTITLED TO ATTORNEYS' FEES AND COSTS.**

In any action or proceeding to enforce . . . [42 U.S.C. § 1983] . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b).  Federal courts have made and upheld attorneys' fees awards under § 1988(b) for prevailing defendants where a plaintiff's claims were frivolous or groundless.  A case is frivolous if it is "so lacking in arguable merit as to be groundless or without foundation." Sullivan v. School Bd. of Pinellas County, 773 F.2d 1182, 1188 (11th Cir. 1985).  The Eleventh Circuit looks to three factors in determining whether a prevailing defendant is entitled to an award of attorneys' fees: 1) whether the plaintiff established a prima facie case; 2) whether the defendant offered to settle; and 3) whether the action was decided on dispositive motions rather than at a trial on the merits.  Head v. Medford, 62 F.3d 351, 356 (11th Cir. 1995); Sullivan, 773 F.2d at 1189.

All of the elements necessary for an award of attorneys' fees to Sergeants Jones and Reynolds are present in this case.  As discussed extensively above, the Plaintiff has not pled anything close to a prima facie case against these Defendants.  In fact, it appears that they are included as Defendants solely because they are sergeants at the jail.  The only specific action these Defendants are alleged to have taken is to purchase/issue TASERs and participated in a massive effort to put the Plaintiff into the "closet cell".  These do not pass the giggle test as sergeants do not make major purchasing decisions for jails and it is just not possible for ten persons and a county government to place a non-resisting prisoner in a cell.  Even if the allegations made sense, as discussed previously, the claims that are purportedly supported by these allegations run directly contrary to ample precedent.

The last two elements are even more easily disposed of.  The Defendants have made no offer to settle this case.  Once the Court grants the Defendants' Motion to Dismiss, the claims

against these Defendants will not have gone to trial.  Accordingly, following the Court's granting of this Motion, the Court should enter an Order finding the Plaintiff's claims against Sergeants Jones and Reynolds to be frivolous and awarding them costs and attorneys' fees.

### CONCLUSION

Based upon the foregoing, Sergeants Buchmann, Jones, and Reynolds request that the Court issue an Order dismissing them from this action and awarding them costs and attorneys' fees.

Respectfully submitted this 22nd day of February, 2011.

**s/Gary L. Willford, Jr.**
GARY L. WILLFORD, JR., Bar No. WIL198
Attorney for Defendants Sgt. Cindy Buchmann, Sgt.
Glenn Jones, and Sgt. Beverly Reynolds
WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
Post Office Box 240909
Montgomery, Alabama  36116
Telephone:  (334) 262-1850
Fax:  (334) 262-1889
E-mail:  gwillford@webbeley.com

**s/Gary C. Sherrer**
GARY C. SHERRER, Bar No. SHE016
Attorney for Defendants Sgt. Cindy Buchmann, Sgt.
Glenn Jones, and Sgt. Beverly Reynolds
SHERRER, JONES & TERRY, P.C.
335 West Main Street
Dothan, AL 36301-1613
Telephone:  (334) 678-0100
Fax:  (334) 678-0900
E-mail:  gary@sherrerjones.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 22nd day of February, 2011, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide notice to the following CM/ECF participants:

Allen Kenneth Mitchell, Esquire
Attorney at Law
707 West Main Street
Dothan, AL  36301

Charles Neville Reese, Esquire
Reese & Reese
P. O. Drawer 250
Daleville, AL  36322-0250

Stephen Parrish Dees, Esquire
Fred White Tyson, Esquire
Rushton, Stakely, Johnston & Garrett, P.A.
P. O. Box 270
Montgomery, AL  36101-0270

**s/Gary L. Willford, Jr.**
Of Counsel