IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

JAMES W. BAILEY, IV,                    )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )        Case No. 1:10-cv-689-MEF
                                        )        (WO - PUBLISH)
ANDY HUGHES, *et al.*,                  )
                                        )
        Defendants.                     )

## MEMORANDUM OPINION AND ORDER

Plaintiff James W. Bailey ("Bailey") filed this lawsuit in response to allegedly unconstitutional deprivations of rights while Bailey was in custody in the Houston County Jail.  Currently pending in this case are three motions to dismiss:

Doc. #32 - Motion to Dismiss by Andy Hughes, Commander Reed;

Doc. #34 - Motion to Dismiss by Sgt. [sic] Buchman, Sgt. Jones, Sgt. Reynolds;

Doc. #36 - Motion to Dismiss by Corrections Officer Armstrong, Corrections Officer Chancey, Corrections Officer Harrison, Corrections Officer Laney;

The following defendants filed these motions pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure:  Andy Hughes ("Hughes") in his individual and official capacity as Houston County Sheriff; Keith Reed ("Reed"), in his individual and official capacity as Commander for Jail Operations at the Houston County Jail; Sergeants Cindy Buchmann ("Buchmann"), Beverly Reynolds ("Reynolds"), and

Glenn Jones ("Jones"), in their individual and official capacities as Sergeants at the Houston County Jail; and Corrections Officers Joseph Armstrong ("Armstrong"),  Adam Chancey ("Chancey"), Kenneth Laney ("Laney"), and John Harrison ("Harrison") in their individual and official capacities as Corrections Officers at the Houston County Jail.

Defendants' motions to dismiss are now pending before this Court.  These motions will be considered together, as the factual and legal basis for each motion is nearly identical.  For the following reasons, each motion is due to be GRANTED and this case is due to be DISMISSED in its entirety, WITH PREJUDICE.

Additionally, defendants Hughes, Reed, Jones, and Reynolds have moved this Court to award reasonable attorney's fees under 42 U.S.C. 1988(b).  This motion is due to be GRANTED.

## I. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 (federal question), and 1343 (civil rights).  The parties do not assert that this Court lacks personal jurisdiction over them, and there is no dispute that venue is proper pursuant to 28 U.S.C. § 1391.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint.  Therefore, for the purposes of adjudging a Rule 12(b)(6) motion to dismiss, the Court will accept as true

all well-pleaded factual allegations and view them in the light most favorable to the plaintiff.  *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007).

Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However, to survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  The plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 559.  It is not sufficient that the pleadings merely leave "open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." *Id.* at 561 (internal quotation and alteration omitted).

## A.  Defendants Incorrectly Argue for a "Heightened" Pleading Standard

Defendants argue that plaintiffs bringing § 1983 claims in the Eleventh Circuit face an even higher burden than *Twombly* and *Iqbal* impose.  Doc. #35, at 8.  Prior to *Iqbal*, the Eleventh Circuit required that §1983 plaintiffs "allege with some specificity the

facts which make out its claim" and noted that this "heightened pleading requirement" was particularly necessary in cases involving qualified immunity."  *GJR Invs., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1367 (11th Cir. 1998).

However, in *Randall v. Scott*, an Eleventh Circuit panel explicitly held that *Iqbal* had "effectively overturned" the Circuit's heightened pleading standard  and that "[p]leadings for § 1983 cases involving defendants who are able to assert qualified immunity as a defense shall now be held to comply with the standards described in *Iqbal*." 610 F.3d 701, 709 (11th Cir. 2010).

The Court disagrees with defendants' assertion that the *Randall* court wrongly overturned prior Eleventh Circuit precedent.   Defendants are correct that "Eleventh Circuit rules explicitly forbid a panel from over turning the decision of another panel" and that a Supreme Court decision must be clearly on point in order to overturn a prior Eleventh Circuit panel.  (Doc. #35 at 8, citing *United States v. Smith*, 122 F.3d 1355, 1359 (11th Cir. 1997); *Garret v. Univ. of Ala. at Birmingham Bd. of Trs.*, 344 F.3d 1288, 1292 (11th Cir. 2003) (per curiam).

However, the *Randall* court decided that *Iqbal* was on point regarding the circuit's heightened pleading standard.  *Randall*, 610 F.3d at 709.  It is not this Court's place to second guess that decision.  As such, *Iqbal's* plausibility standard, rather than the Eleventh Circuit's overturned heightened pleading standard, is applicable to this case.

4

### III. FACTUAL AND PROCEDURAL BACKGROUND

Bailey was an inmate with the Alabama Department of Corrections at all times relevant to this action.  On or around August 13, 2008, Bailey was housed at the Houston County Jail.  Doc #1 at 9-10, ¶1.  Bailey was housed in a cell with two other inmates and Bailey's bed was on the floor in close proximity to the cell's toilet.  *Id.* at 10, ¶2.

On the orders of Defendant Buchmann,[1] Defendant Armstrong and Corrections Officer Stephen Moon ("Moon") arrived at Bailey's cell to conduct a search for contraband at around 10:50 PM.  Before they began their search, Bailey asked Armstrong what time it was, and Moon responded along the lines of "Nighttime you dumb f**k."[2] *Id.*  Moon did not find any contraband in the cell, and the complaint indicates that Moon looked "disappointed."  *Id.* at 10, ¶3.

Upon completion of the search of the cell, Bailey and his cellmates were strip searched.  The strip search included orders that Bailey and his fellow inmates "squat and cough in the presence of each other" and that Bailey "stand and spread his butt-cheeks in front of the other cellmates."  *Id.* at 10-11, ¶4.  Bailey "reminded the officers that I have a lawsuit against you and I am not going to play with you," and that "if they returned to my

---

[1]  Hughes's complaint indicates that Buchmann "purportedly" directed Armstrong and Moon to search Bailey's cell (Doc #1 at 9-10, ¶1).  Reading the alleged facts in the light most favorable to the Plaintiff, the Court understands this to mean that Buchmann ordered the search.

[2]  In his complaint, Bailey indicates that he later complained to a Sergeant about "the comments made by Corrections Officer Moon."  It is possible that Bailey is referring to these comments.  *See infra* note 6 and accompanying text.

cell at any time, they need a sergeant / supervisor to come with them."[3]  *Id.* at 11, ¶4.

Moon responded "Who do you think sent me down here?"  *Id.* at 11, ¶5.  Moon and

Armstrong then left Bailey's cell.  *Id.*

Ten minutes later, Moon and Armstrong returned with Corrections Officer Leary

("Leary").  Armstrong was "holding in his right hand a black knife."  *Id.*  Leary asked

Bailey to come out of his cell.  Bailey refused and repeated his request for a supervisor so

he could "report Correction Officer Moon's actions."[4]  *Id.*  Leary again asked Bailey to

come out to "talk about it," *id.*, and Bailey again refused.  The officers left.

After another ten minutes, Armstrong, Moon, and Leary returned with Defendants

Chancey, Laney, and Harrison, as well as Corrections Officers Culbreth ("Culbreth"),

Jackson ("Jackson"), and Phillips ("Phillips").  Leary opened the door to Bailey's cell, and

Bailey could see that one officer was recording the proceedings with a video camera.

Armstrong was pointing an armed Taser at Bailey.  Leary "asked" Bailey to get on his

knees.  *Id.* at 12, ¶7.  Bailey did not.  Bailey instead asked if there was a sergeant present,

and was told that there was not.  *Id.*

Leary then "advised" Bailey to get on his knees.  *Id.* at 12, ¶8.  Bailey did not.

---

[3]  Here, Bailey cites to his previous lawsuit against, among others, Houston County Jail officials and Corrections Officer Moon.  *See* Complaint, ECF No. 1, *Bailey v. Bonnin*, No. 1:05-cv-00419-MHT-TFM (M.D.Ala., filed May 5, 2005).

[4]  It is not clear from the complaint what actions Bailey intended to report.  The Court therefore assumes Bailey intended to report the strip search, which Bailey believed to be unconstitutional.

Bailey instead replied "As long as I'm in this cell, I'm restrained and I'm not coming out unless a sergeant [or] supervisor is present." *Id.*

Leary then "advised" Bailey that if Bailey did not get on his knees, Leary would shoot Bailey with the TASER. *Id.* at 12-13, ¶9.  Again, Bailey did not do as Leary asked. Instead, Bailey responded "I am in fear for my life and I am not coming out of this cell unless a sergeant is present." *Id.*  At this point, Bailey's complaint states that "Officer Leary looked back at Corrections Officer Moon, they both smiled and he shot BAILEY in the side."[5]  *Id.* at 13, ¶10.  Bailey then pulled the Taser wires out, and ran out of his cell: "as Bailey ran away from the officers he turned around, with his hands up and was shot again in the leg.  He went to the floor.  As he went down, he was kneed in the back of the head.  He was again being shocked and an officer started to also shock him in the back." *Id.* at 13-14, ¶11.

Bailey was left with a TASER barb in his thigh.  About an hour after the events described above, Bailey was transported to Southeast Alabama Medical Center, where the barb was removed.  Bailey was not given a tetanus shot, nor was the area where the barb entered bandaged or treated with antibiotics.  *Id.* at 14, ¶12.  Bailey has a scar as a result

---

[5]  It is unclear who "he" is in this sentence.  Up to this point, Armstrong is the only person mentioned as having a TASER.  However, it is unlikely that Armstrong was the only officer carrying a TASER, as Bailey alleges that he was shocked additional times over the course of this incident.   Because it was Leary who threatened to shoot Bailey, Leary, who was never properly served and has been dismissed from this lawsuit, was likely the first to shoot Bailey.

of this incident.  *Id.* at 15, ¶15.

Upon his return to the Houston County Jail, Bailey told Sergeant Lee Ray Bonnin ("Bonnin") about the "comments made by Corrections Officer Moon."[6]  Bonnin told Bailey to shut up.  (*Id.* at 14-15, ¶13)  Bailey was then "placed in a cell . . . where there was no toilet, no sink, no water, or food" and left there for "approximately 8 hours."  *Id.*

Bailey was eventually taken back to Holman Prison.  Defendants Hughes and Buchmann asked the Department of Corrections to discipline Bailey for the behavior described above.  The complaint alleges that the Department of Corrections refused on the basis of the failure of the Houston County Corrections Officers to follow proper procedure in dealing with Bailey.

## IV. DISCUSSION

### A.  Bailey's Claims

For the purpose of this analysis, the Court will refer to Defendants Hughes, Reed, Buchmann, Jones, and Reynolds, collectively, as the "supervisory defendants."  Doc. #52. Defendants Armstrong, Chancey, Laney, and Harrison will be referred to as "The corrections officer defendants."  Doc. #53.  All claims alleging Constitutional violations are brought through 42 U.S.C § 1983.

---

[6]  It is not clear what comments Bailey is referring to.

8

### 1. Claims against all defendants

a.  Creating a substantial risk of serious officer-on-inmate assaults at the Houston County Jail.  Doc. #1 at 16, Count I.

b.  Malicious and sadistic use of excessive force in retaliation against Bailey for his earlier lawsuit against Houston County Corrections Officers, in violation of Bailey's right to be free from cruel and unusual punishment under the Eighth Amendment and his right to freedom of speech under the First and Fourteenth Amendments.  *Id.* at 17, Count II; 21-22, Count IV.

c.  Failure to intervene to prevent Bailey from being subjected to excessive force in violation of the Eighth and Fourteenth Amendments.[7]  *Id.* at 18, Count II; 25, Count VIII.

d.  Defendants "malicious[] and sadistic[]" use of a TASER on Bailey violated Bailey's rights under the Fourth, Eighth, and Fourteenth amendments of the Constitution.[8]  *Id.* at 22, Count VI.

e.  Defendants violation of Bailey's rights under the Eighth and Fourteenth Amendments[9] by purchase and use of stun guns manufactured by TASER International, Inc.  *Id.* at 26-28, Count IX.

### 2. Claims against supervisory defendants

a.  Unconstitutional use of force in performing a strip-search on Bailey.  The Court reads this count to encompass both a claim for direct participation by the supervisory defendants and a claim for supervisory liability.  *Id.* at 19, Count III.

b.   Supervisory defendants subjected Bailey to unconstitutionally

---

[7]  *See, infra,* Part IV.B. (discussing disposition of Fourteenth Amendment claims where claims are made under both the Eighth and Fourteenth Amendments).

[8]  *See, infra,* Part IV.B. (discussing disposition of Fourteenth Amendment claims where claims are made under both the Eighth and Fourteenth Amendments).

[9]  *See, infra,* Part IV.B. (discussing disposition of Fourteenth Amendment claims where claims are made under both the Eighth and Fourteenth Amendments).

overcrowded conditions while Bailey was detained in the Houston County Jail in violation of Bailey's Eighth and Fourteenth Amendment rights.[10]

c.  An implicit failure to train claim based on Bailey's response to supervisory defendants motion to dismiss.  Doc. #44 at 10.

### 3.  Claims against correction officer defendants

a.  Defendant Armstrong violated Bailey's right to due process under the Fourteenth Amendment by refusing to ask a sergeant to come to Bailey's cell upon Bailey's request for a sergeant or a supervisor as described above.[11]  *Id.* at 22, Count V.

b.  Defendants Armstrong and Chancey violated Bailey's Plaintiffs Due Process Rights by using TASERs on Bailey.[12]  *Id.* at 24, Count VII.

### 4. Claim Against Corrections Officer Defendants and Sergeants Buchmann, Reynolds, and Jones

a.  These defendants violated Bailey's Eighth Amendment rights by placing him in a "closet cell" for eight hours.

---

[10]  *See, infra,* Part IV.B. (discussing disposition of Fourteenth Amendment claims where claims are made under both the Eighth and Fourteenth Amendments).

[11]  This claim is also made against Houston County, as well as Moon, who were never made parties to this suit.  This claim is also alleged against Leary, who has since been dismissed from suit.  Doc. #59.

[12]  This claims is also alleged against Corrections Officer Leary, whom has since been dismissed from suit.  Doc. #59.

**B.  Neither The Fourteenth Amendment Nor the Fourth Amendment's Prohibition of  Excessive Force Apply to Bailey's Claims, as Bailey Was a Convicted Inmates Rather Than a Pre-Trial Detainee or a Free Citizen**

Bailey attempts to bring a myriad of claims under both the Fourteenth and Eighth Amendments. *See,* Parts IV.A.14, *supra*.  As a preliminary matter, the Court must distinguish between Bailey's claims under the Eighth and Fourteenth Amendments.  To the extent that Bailey brings claims under both the Eighth and Fourteenth Amendment, the Fourteenth Amendment claims are due to be DISMISSED.  Additionally, for reasons discussed below, any excessive force claim under the Fourth Amendment must also be DISMISSED.

Under *Cottrell v. Caldwell*, "claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners."  85 F.3d 1480, 1490 (11th Cir. 1996).  The *Cottrell* court also noted that the standard applicable to Eighth and Fourteenth amendment claims is the same, "so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees." *Id*.

Bailey argues that *Cottrell* stands only for the proposition that the same standard is applicable to both Eighth and Fourteenth Amendment claims.  Doc. #44 at 6-7.  Therefore, Bailey takes the position that, while "there may be a point where he must [sic]

chose" as to whether he is a pre-trial detainee or a convicted inmate, that point is not the

pleadings stage.  *Id.*  The defendants argue in response that "where a specific

constitutional provision provides the substantive protection at issue, that constitutional

provision and not the more general substantive due process protection of the Fourteenth

Amendment is to be used."  Doc. #52 at 2-3, citing *Graham v. Connor*, 490 U.S. 386, 395

(1989).  The Defendants have the better of this argument.

The former Fifth Circuit has held that "the due process clause accords pretrial

detainees rights not enjoyed by convicted inmates.  While a sentenced inmate may be

punished in any fashion not cruel and unusual, the due process clause forbids punishment

of a person held in custody awaiting trial but not yet adjudged guilty of *any* crime."

*Jones v. Diamond*, 636 F.2d 1364, 1368 (5th Cir. January, 1981)[13] (emphasis added),

*overruled on other grounds by Int'l Woodworkers of Am. v. Champion Int'l Corp.*, 790

F.2d 1174 (5th Cir. 1986).

Here, Bailey indicates that, after the incident at the Houston County Jail, he was

"taken back" to Holman Prison.  Doc. #1 at 15, ¶14.  As the defendants point out, a

detainee is not "taken back" to prison unless he is a convicted inmate.  Doc. #33 at 9.

Bailey concedes in his response that "[i]t is undisputed that **BAILEY** was an inmate with

the Department of Corrections."  Doc. #44 at 6.  Because Bailey has been adjudged guilty

───────────────

[13]  In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1205, 1209 (11th Cir. Nov. 3,
1981), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions
handed down prior to the close of business on September 30, 1981.

of a crime, he may be "punished in any fashion not cruel and unusual." *Jones*, 636 F.2d at 1368.

*Cottrell* dictates that claims of mistreatment by pretrial detainees and convicted prisoners are governed by the same standard. *Cottrell*, 85 F.3d at 1490. *Cottrell* does not indicate that a person being held as a convicted inmate may retain the rights of a pre-trial detainee, regardless of whether there are additional charges pending against the inmate. As such, Bailey's Fourteenth Amendment claims are due to be DISMISSED.

Additionally, because Bailey was at all times a convicted inmate and not a free citizen or a pretrial detainee, the Eighth Amendment, and not the Fourth Amendment, applies to Bailey's excessive force claims. *See Whitley v. Albers*, 475 U.S. 312 (1986) (evaluating use of force during a prison riot in the context of prisoner's Eighth Amendment rights); *Hudson v. McMillian*, 503 U.S. 1 (1992) (considering use of force against shackled inmate under the Eighth Amendment).

Therefore, to the extent that Bailey claims defendants violated his Fourth Amendment Rights through the use of excessive force,  those claims are due to be DISMISSED and defendants' motions to dismiss regarding Bailey's Fourth Amendment claims are due to be GRANTED.

**C.  The Supervisory Defendants are Entitled to Qualified Immunity in Their Individual Capacities**

The Supervisory Defendants contend that they should be granted qualified immunity to all claims brought against them in their individual capacities.  The Court agrees, and all claims against the supervisory defendants in their individual capacities are therefore due to be DISMISSED.

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  *Accord*, *Hope v. Pelzer*, 536 U.S. 730 (2002).  Qualified immunity allows officials to carry out their duties "without fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law."  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted); *Wood v. Kesler*, 323 F.3d 872 (11th Cir. 2003).  Because this defense should be applied at the earliest possible stage of litigation, it is proper for a district court to rule on a claim of qualified immunity asserted in a motion to dismiss.  *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003).  The Court should grant a motion to dismiss on qualified immunity grounds "if the plaintiff's complaint fails to allege a violation of a clearly established constitutional or statutory right."  *Williams v.*

14

*Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1300 (11th Cir. 2007).

To be eligible for qualified immunity, government officials must first show that they were acting within their discretionary authority. *Gonzalez*, 325 at 124. Second, the Court must determine whether plaintiff's allegations, if true, establish a constitutional violation. *Hope v. Pelzer*, 536 U.S. 730, 736 (2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. However, if the alleged conduct did violate constitutional rights, the next step of the inquiry is to "look to the pleadings to see if the plaintiff has successfully alleged the violation of a clearly established right." *O'Rourke v. Hayes*, 378 F.3d 1201, 1206 (11th Cir. 2004).

## 1. Supervisory Defendants Were Acting Within Their Discretionary Authority

To receive qualified immunity, a government official must first prove that he was acting within his discretionary authority. *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). In the Eleventh Circuit, the test for determining whether an employee is acting within his discretionary authority is a question of whether the actions complained of are of a sort that fall within the official's job responsibilities. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). "Our inquiry is two-fold.

We ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Id.*

As defendants point out in their reply brief, the inquiry is not whether the allegedly illegal action was within the defendant's authority, but rather whether the allegedly illegal action was in the "general nature" of a job-related function and accomplished through means within the official's power to utilize.  Doc. 52 at 4, *citing Holloman*, 370 F.3d at 1266.  Additionally, the Supreme Court has "repeatedly said both that prison officials have broad administrative and discretionary authority over the institutions they manage and that lawfully incarcerated persons retain only a narrow range of protected liberty interests."  *Hewitt v. Helms*, 459 U.S. 460, 467 (1983).

Purchasing TASERs, supervising corrections officers, and writing letters to the Department of Corrections are well within the "arsenal of powers" provided to the supervisory defendants to accomplish the goal of running a functional correctional facility.  *Holloman*, 370 F.3d at 1267.   What's more, the plaintiff's complaint clearly admits that each defendant, with the exception of Defendant Hughes, was "acting within the line and scope of his employment at all times complained of herein."  Doc. #1 at 4-7.  The Court therefore concludes that, at all relevant times, the supervisory defendants were acting within their discretionary authority.

16

### 2. Supervisory Defendants Did Not Violate Bailey's Constitutional Rights

#### a. Respondeat Superior Liability is not Available under § 1983

To the extent that Bailey's claims against the supervisory defendants are an attempt to hold them vicariously liable for the actions of the corrections officers, Bailey's claims fail as a matter of law. Neither the express language of § 1983 nor the holdings of the United States Supreme Court support liability on this basis.

Title 42, U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Merely employing an individual who causes harm is insufficient to invoke the remedy of this statute. The United States Supreme Court adopted this holding over thirty years ago. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("we conclude that a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory").

**I**. **Bailey Does Not Allege Sufficient Facts to Support a Claim of
§ 1983 Liability Based on Unconstitutional Custom or Policy**

Based on Bailey's Response, Doc. #44,  to Hughes and Reed's Motion to Dismiss,

Bailey intends to allege a claim against the supervisory defendants based on either, (a)

unconstitutional customs or policies or, (b) a failure to train.  To make these claims,

Bailey need not have articulated the claim in his complaint.  Rather, he only needs to have

pled sufficient facts to make out a plausible claim on these grounds.[14]  However, Bailey

has not alleged sufficient facts to support a claim of unconstitutional policy or failure to

train and therefore any potential claims based on these grounds are due to be dismissed.

Under *Monell v. Dept. of Social Svcs. of City of N.Y.*, government officials

> can be sued directly under § 1983 for monetary, declaratory, or injunctive
> relief where . . . the action that is alleged to be unconstitutional implements
> or executes a policy statement, ordinance, regulation, or decision officially
> adopted and promulgated by that body's officers.  Moreover . . . local
> governments . . . may be sued for constitutional deprivations visited
> pursuant to governmental "custom" even though such a custom has not
> received formal approval through the body's official decisionmaking
> channels."

---

[14]  Defendants note that Plaintiff's complaint does not set forth specific claims for
failure to train or unconstitutional policy.  While this is true, if Bailey's factual allegations
provide a plausible basis for a claim of failure to train or unconstitutional policy, the fact
that these claims are not specifically enumerated among Bailey's counts would not
prevent the claims from going forward.  *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949
(2009) ("To survive a motion to dismiss, a complaint must contain sufficient **factual**
matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added)).  In other
words, if Bailey has pled sufficient facts to support a claim, he need not call that claim by
its given name in the complaint in order for the claim to survive dismissal.

436 U.S. 658, 690-91 (1978).

Under this standard, the supervisory defendants could be held liable if Bailey could prove the existence of a policy or custom that led to an unconstitutional deprivation of rights. However, as Defendants point out in their reply brief, Doc. #52, Bailey's complaint does not allege any facts from which the Court could determine that such policies or customs existed. Nowhere in Bailey's recounting of the facts does he mention that his being subject to excessive force, a failure to protect, a strip search, overcrowding, or retaliation—to the extent that any of these violations occurred at all—was a result of a policy or custom put in place by the supervisory defendants.

Rather, in his response to defendants' motions to dismiss, Bailey states that these claims should survive if the supervisory defendants' "policies were the driving force behind the actions of the [corrections] officers." Doc. #44 at 11; Doc. #45 at 12. At best, this statement amounts to no more than a "label or conclusion or a formulaic recitation of the elements of a cause of action," *Iqbal*, 129 S.Ct at 1949, or a "conclusory allegation[], unwarranted deduction of facts or legal conclusions masquerading as facts," none of which are sufficient to prevent dismissal. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004).

### ii.  Bailey Does Not Allege Sufficient Facts to Support a Claim of Deliberate Indifference to a Failure to Train

Inadequacy of training can serve to support a claim for liability under § 1983 and the Eighth Amendment only if the supervisors responsible for training were deliberately indifferent to a risk of serious harm to an inmate.  *Farmer v. Brennan*, 511 U.S. 825, 828-29 (1994).

To support a claim under this high standard, Bailey must plead facts to show that the supervisory defendants knew of and disregarded an "excessive risk to inmate health or safety."  *Id.* at 837.  In other words, the facts must show that the supervisory defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the supervisory defendants] also dr[e]w the inference."  *Id*; *see also A.P.* ex rel *Bazerman v. Feaver*, 293 Fed. App'x. 635, 652 (11th Cir. 2008).

Here, Bailey pleads no facts to show that the supervisory defendants knew of any failure to train or any other condition of Bailey's custody that created a serious risk of harm to Bailey.  Needless to say, where Bailey does not plead that the supervisory defendants knew of any such conditions, he certainly does not plead sufficient facts to show that they also disregarded those conditions.

For the reasons stated above, any claim Bailey brings on a basis of respondeat superior, failure to train, or unconstitutional custom or policy is due to be DISMISSED.

### b.  Bailey Does Not Allege Sufficient Facts to Show that The Supervisory Defendants Used Excessive Force, Failed to Protect, Strip Searched, or Retaliated Against Bailey, Either Directly or in Their Capacities as Supervisors

To the extent that these claims seem to be brought, inexplicably, as direct participation claims, Bailey alleges no facts to indicate that the supervisory defendants were directly involved in Bailey's cell-extraction, the search of his cell or his person, or the ensuing use of TASER's on Bailey after he ran from his cell.  Any direct liability claims are therefore due to be DISMISSED.  To the extent that these claims are based on either respondeat superior, failure to train, illegal custom or policy, or other vicarious liability theories, the claims are due to be DISMISSED for the reasons discussed in part IV.C.2.a, *supra,* and the additional reasons discussed below.

To establish supervisory liability in this circuit, a plaintiff must show that either the supervisor personally participated in the alleged unconstitutional conduct or that there is a "causal connection between the actions of a supervising official and the alleged constitutional deprivation."  *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  As indicated above, Bailey has not alleged personal participation on the part of any of the supervisory defendants.  Therefore, Bailey must plead facts that plausibly show a causal relationship in one of three ways: (1) Supervisor had notice of a widespread history of abuse which he neglected to correct, (2) Supervisor implemented a custom or policy that resulted in deliberate indifference to constitutional rights, or (3) the facts support "the

21

inference that the supervisor directed . . . subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. *Gonzales v. Reno*, 325 F.3d 1228, 1234-35 (11th Cir. 2003).

Bailey has not alleged a widespread history of abuse of which any of the supervisory defendants had notice, nor does Bailey's complaint mention any sort of policy in place at the Houston County Jail, much less a policy which resulted in deliberate indifference to constitutional rights.[15]  Lastly, the only facts Bailey has pled that "support the inference that the supervisor directed . . . subordinates to act unlawfully" is his allegation that, when Bailey told Moon and Armstrong that they had to have a supervisor with them anytime they interacted with Bailey, Doc. #1 at 11 ¶¶ 5-6, Moon responded "[w]ho do you think sent me down here?"  *Id.*  Bailey goes on to say that Sergeant Buchmann "purportedly directed Officers Moon and Armstrong to conduct a single cell search for contraband." *Id.* at 10.  This falls far short of alleging that Sergeant Buchmann, much less any of the other supervisory defendants, directed the corrections officers to act unlawfully, as is required for a claim of supervisory liability.

Even taken in the light most favorable to Bailey, accepting all allegations as true, Moon's statement is not enough to infer that one of the supervisory defendants ordered

---

[15]  The one possible exception to the absence of any policy allegations is that Bailey alleges it was unconstitutional to arm corrections officers with TASERs.  Because the use of TASERs in correctional facilities has been held constitutional, *see infra* Part IV.C.2.d, this policy claim lacks any legal merit.

Moon and Armstrong to act unlawfully or knew they would do so.  Indeed, Bailey's

allegations do not support an inference that Moon and Armstrong acted unlawfully at all.

*See infra* Part IV.D.

For these reasons, all of Bailey's claims regarding the liability of the supervisory

defendants for excessive force, failure to protect, unlawful strip search, and retaliation are

due to be DISMISSED.

### c.  Bailey Does Not Allege Sufficient Facts to Show That The Supervisory Defendants Subjected Bailey to Overcrowded Prison Conditions

Much of the analysis in Part IV.C.2.a.i, *supra*, concerning a failure to train creating

inhumane conditions of confinement, is also applicable to a discussion of the supervisory

defendant's liability for overcrowded prison conditions.

First, however, Bailey does not allege sufficient facts to show that the institution in

which he was confined was, in fact, overcrowded.  As defendants correctly point out,

Bailey's complaint  at best allows the inference that "there were more people in the

Plaintiff's cell than there were bunks."  Doc. #33 at 14.

The Court applies the same deliberate indifference standard to Plaintiff's

overcrowding claim as to Plaintiff's failure to train claim.  The Eleventh Circuit has held

that to establish an Eighth Amendment claim based on prison conditions, an inmate must

meet both an objective component, which requires that the conditions be "sufficiently

serious," and a subjective component, which requires that officials acted with "deliberate indifference to health or safety."  *Fischer v. Ellegood*, 238 Fed. App'x 428, 433 (11th Cir. 2007).   Additionally, "[o]nly those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian,* 503 U.S. 1, 9 (1992).

Bailey's allegations, taken in the light most favorable to him, do not satisfy the objective standard.  The *Ellegood* case itself is illustrative.  In *Ellegood*, the Plaintiff alleged, *inter alia*, that "[s]ome cells had as low as four inmates in them while other cells had as many as seven [and] inmates were not only forced to sleep on bare cement floors but also on other inmates' mattresses and linens (which had not been washed after others' use of those linens)." *Ellegood*, 238 Fed. App'x at 433.  The *Ellegood* court noted that "[e]ven double capacity . . . does not violate the Constitution absent 'deprivations of essential food, medical care, or sanitation," and that there was "no reason to believe that sleeping on the floor or on unwashed bed linens . . . amounts to either a deprivation of 'essential sanitation . . . or an Eighth Amendment violation in [its] own right."  *Id; see also Alfred v. Bryant*, 378 Fed. App'x 977, 980 (11th Cir. 2010) (holding that requiring an inmate to sleep in a cell with a broken toilet and no mattress for eighteen days did not violate the Eighth Amendment).

Bailey does not allege that his cell was doubly crowded.  He only alleges that he slept on a mattress near a toilet.  Because the Eleventh Circuit has previously held that even sleeping on a bare floor is not a violation of the Eighth Amendment, even taking all of Bailey's allegations as true, his overcrowding claims do not rise to the level of a Constitutional violation.

Coupling these cases with the sparse facts Bailey alleges to make out his claim of overcrowding, the Court concludes that Bailey's claim that he was subjected to overcrowded prison conditions in violation of the Eighth Amendment is due to be DISMISSED.

### d. Bailey Wrongly Contends that The Use of TASERs is Unconstitutional

Bailey seems to allege both that the use of TASERs in a correctional facility is unconstitutional in and of itself, and that the supervisory defendants in this particular lawsuit had a particular unconstitutional policy of using TASERs on inmates as a means of retaliation.  As discussed above, Bailey does not allege that the supervisory defendants promulgated any policy or custom regarding the retaliatory use of TASERs. Additionally, Bailey fails to make out a claim of the necessary "deliberate indifference" regarding any possible failure to properly train corrections officers in the use of TASERs. For these reasons any unconstitutional policy or failure to train claim is due to be

DISMISSED.  For the reasons discussed below, any claim that the use of TASERs is unconstitutional in its own right is also due to be DISMISSED.

The Eleventh Circuit has explicitly held that the use of TASERs is constitutional in a variety of circumstances.  In *Draper v. Reynolds*, the Eleventh Circuit held that a police officer's use of a TASER to administer a one-time shock was a reasonable use of force in light of the "totality of the circumstances" of a traffic stop.  369 F.3d 1270, 1278 (11th Cir. 2004).  The plaintiff in Draper was admittedly more combative than Bailey was in the instant case, repeatedly yelling at the police officer and using profanity.  *Id.* However, the *Draper* court also noted that part of what warranted the use of a TASER was the plaintiff's repeated refusal to comply with the officer's verbal commands.  *Id.*  By Bailey's own admission, he repeatedly refused the verbal commands—commands that might be more accurately construed as polite requests—even to the point where Bailey knew he would be shocked if he refused an additional time.  Doc. #1 at 12-13, ¶¶ 8-10. At most, Bailey was shocked four times, though his allegations make it sound like it was more likely three times.  *Id.*  In light of the fact that Bailey was an inmate, was non-compliant, and then, by his own admission, ran out of his cell and past a group of corrections officers after one shock failed to subdue him, three to four shocks is not unreasonable under the "totality of the circumstances."

Additionally, the Seventh Circuit, in precedent this Court considers persuasive, has noted that "it is not hard to imagine any number of scenarios that would justify the [use of] . . . taser guns" in "a jail or prison setting." *Lewis v. Downey,* 581 F.3d 467, 477 (7th Cir. 2009). Here, this was a tense situation in a correctional facility involving a non-compliant prisoner who actively fled out of his cell and past several corrections officers after a warning that he would be shocked for continued non-compliance. Under these circumstances, it is not the Court's place to say that this was not a situation that justified the use of a non-deadly weapon whose use has been ruled constitutional in any number of scenarios.

All of Bailey's claims based on the use or issuance of TASERs are therefore due to be DISMISSED.

### 3.  Defendants Did Not Violate Any "Clearly Established" Constitutional Right

Even if Bailey's pleadings presented a plausible claim that the supervisory defendants violated Bailey's constitutional rights—which, as indicated in Part IV.C.2, they do not—Bailey also fails to establish that any right violated was clearly established.

Law can be "clearly established" in three ways. First, the words of a relevant constitutional provision or statute may themselves be specific enough to clearly establish the applicable standard of conduct, even in the total absence of case law. *Storck v. City of*

*Coral Springs*, 354 F.3d 1307, 1318 (11th Cir. 2003).     Second, preexisting case law

may serve to establish the boundaries of constitutionally improper conduct. *Vinyard*, 311

F.3d at 1351.  Case law need not arise out of factually identical situations to clearly

establish law for purposes of the qualified immunity analysis.  *Id.* at 1351.  Rather, broad

legal principles established in case law may serve to clearly establish the law even for

cases arising out of factually different situations.  *Id.*  Third, in the absence of case law

with a broad holding sufficient to provide fair notice, individual cases may serve to

clearly establish the law arising out of materially similar factual circumstances.  *Id.* at

1351-52.  In short, as the Eleventh Circuit has held, "[u]nless a government agent's act is

so obviously wrong, in the light of pre-existing law, that only a plainly incompetent

officer or one who was knowingly violating the law would have done such a thing, the

government actor has immunity from suit." *Storck*, 354 F.3d at 1318.

Bailey fails to establish a violation of a "clearly established" right under any of

these three tests.  First, Bailey does not point to any specific statutory or Constitutional

provision that would establish the conduct at issue as unlawful or unconstitutional, and

this Court is not aware of any such provision.  Second, Bailey points to no series of

precedents to establish "broad legal principles" making the conduct at issue

unconstitutional.  Lastly, Bailey does not point to a single case with materially similar

facts in which a court has held similar conduct to be unlawful.  Rather, as discussed

throughout this order and opinion, case law that has addressed similar factual circumstances indicates that the conduct at issue was constitutional.

Therefore, there has been no violation of a clearly established constitutional right, and for this reason, as well as those discussed in Part IV.C.2, *supra*, all claims against the supervisory defendants in their individual capacities are due to be DISMISSED.

## D.  The Corrections Officers Are Entitled To Qualified Immunity In Their Individual Capacities

Like the supervisory defendants, the corrections officer defendants also claim that they are entitled to qualified immunity.  The test to apply to the corrections officer defendants is the same as that set forth in Part IV.C, *supra*.  To be entitled to qualified immunity, the corrections officers must have been (A) acting within their discretionary authority, and either (B) have committed no violation of a constitutional right, or © if, based on the allegations, a constitutional right was violated, that right must  not have been clearly established at the time of the violation.

## 1.  The Corrections Officers Were Acting Within Their Discretionary Authority

Under the standard set forth in Part IV.C.1, *supra*, the corrections officer defendants were acting within their discretionary authority in committing all of the acts alleged in Bailey's complaint.  *See also Harbert Int'l., Inc. v. James*, 157 F.3d 1271, 1282

(11th Cir. 1998) ("a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties").  As this Court has previously noted, "the determination that an officer was acting within his discretionary authority is quite a low hurdle to clear." *Godby v. Montgomery Cnty. Bd. Of Educ.,* 996 F. Supp. 1390, 1401 (M.D. Ala. 1999).

Everything the corrections officer defendants are alleged to have done was at least in the "outer perimeter" of their discretionary duties; indeed, all of the following seem to constitute the very core of a corrections officer's duties: conducting a cell search, a strip search, using reasonable force (in the form of a shock from a TASER) on a non-compliant inmate and then using the same force to stop the inmate from fleeing from his cell, and confining the inmate after a disciplinary incident.  To the extent that any of these acts require further analysis, that analysis is undertaken in Part 2, below.

### 2.  The Corrections Officers Did Not Violate Bailey's Constitutional Rights

#### a.  Bailey Does Not Allege Sufficient Facts To Show The Corrections Officers Used Excessive Force Against Him or Failed to Intervene When Excessive Force Was Used

To determine whether a defendant used excessive force in violation of the Eighth Amendment, the Court must determine "whether force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of

30

causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1984).[16]  The corrections officer

defendants' Memorandum in Support of their Motion to Dismiss, Doc. #37, does an

excellent job of laying out the relevant standard to apply to this situation, and the Court

adopts most of the reasoning laid out in that brief.

> The Supreme Court has held that
>
> corrections officers must balance the need "to maintain or restore
> discipline" through force against the risk of injury to inmates [and] . . .
> [p]rison administrators . . . should be accorded wide-ranging deference in
> the adoption and execution of policies and practices that in their judgment
> are needed to preserve internal order and discipline and to maintain
> institutional security.

*Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (internal quotations and citations omitted).

In determining whether a given use of force was wanton or unnecessary, the Court

must consider (1) the need for the application of force, (2) the relationship between the

need and the amount of force used, (3)  the threat reasonably perceived by the prison

official, (4) any efforts made to temper the severity of a forceful response, and (5) the

extent of the injury suffered by the inmate.  *Whitley*, 475 U.S. at 320-21.  Lastly, a court

must keep in mind "the deference normally extended to prison officials in acting to insure

the proper administration, safety and security of a penal institution."  *Ort v. White*, 813

F.2d 318, 22 (11th Cir. 1987).  The Supreme Court has noted that this deference "extends

---

[16]  While *Whitley* was a Fourteenth Amendment case, the standard to be applied in
Eighth and Fourteenth Amendment cases regarding excessive force is the same.  *Cottrell
v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996).

to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline." *Whitley*, 475 U.S. at 322.

As the corrections officer defendants point out in their brief, Doc. #37 at 15, Bailey's complaint does not make out specific allegations of who used force against him. This is significant because some of the corrections officers who were at Bailey's cell during this incident are not defendants in this lawsuit.  Bailey seems to allege that Armstrong, Leary, or Moon administered the first shock.  Doc. #1 at 12-13, ¶¶ 9-10. Bailey then alleges that, after running out of his cell, he was shocked two or three more times, while being kneed in the back of the head.  Bailey does not give any indication as to whether these actions were undertaken by the corrections officers who are a part of this lawsuit, or by corrections officers Moon, Leary, or Phillips, who are not.

Even assuming that Bailey's complaint properly alleges that the defendants in this suit used the force in question, Bailey's excessive force and failure to intervene claims are due to be dismissed.  The corrections officers only used force on Bailey after he had repeatedly refused to come out of his cell following the search.  *Id*.  Even then, Bailey was only shocked once before he, by his own admission, pulled the TASER wires out and ran out of the cell.  *Id.*  Only during what could easily be construed as an attempt at escape, while Bailey's cell door was open and with Bailey's cellmates, mentioned earlier

in the complaint in the context of the contraband search, Doc. #1 at 10, ¶4, presumably looking on, did the corrections officer use more force on Bailey to bring him to the ground and subdue him.  *Id.* at 13-14 ¶11.

The only indication that the forced used in this incident might have been malicious or sadistic is Bailey's allegation that "Officer Leary looked back at Corrections Officer Moon, they both smiled and he shot BAILEY in the side." Doc. #1 at 13, ¶10.  As discussed above, however, Bailey was warned extensively that he would be shocked if he continued to refuse the officers' requests.  Thus, the initial shock was administered for a legitimate disciplinary purpose, not solely for "the very purpose of causing [Bailey] harm" as is required to establish an Eighth Amendment violation.  *Johnson v. Breeden*, 280 F.3d 1308, 1314 (11th Cir. 2002).

Bailey asserts that *Whitley* is inapplicable to Bailey's claims, because the underlying facts in *Whitley* concerned an actual prison riot.  Doc. #43.  However, in addition to the language from *Whitley,* quoted above, noting that judicial deference extends to measures undertaken by prison officials both in response to breaches of prison discipline as well as preventative or prophylactic measures, *Whitley*, 475 U.S. at 321, the *McMillian* Court later noted that "[m]any of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order.  Whether the prison disturbance is a prison riot or a lesser disruption, corrections officers must balance the need to maintain

or restore discipline through force against the risk of injury to inmates." *McMillian*, 503

U.S. at 6 (internal quotations omitted).  Therefore, the "malicious and sadistic" standard

applies to Bailey's claims just as it does to those made in *Whitley*.  In his Response to

Defendants' Motion to Dismiss, Bailey also says he makes a case that defendants actions

were malicious and sadistic, Doc. #43 at 8.  However, there is nothing to support this

claim other than a mere label of the sort explicitly disfavored by *Twombly,* 550 U.S. at

559, and Bailey's response merely cites to parts of his complaint that assert that label.

Doc. #43 at 8.

　　　　Bailey's reliance on the Eleventh Circuit's holding in *Fundiller v. City of Cooper*

*City* is also misplaced.  There, an officer's use of force to protect himself was deemed

unreasonable where it was necessitated by the officer's own "unjustified physical abuse."

777 F.2d 1436, 1441-42 (11th Cir. 1985).  As defendants point out, however, Doc. #53 at

7, that case involved an undercover officer who began firing at the plaintiff without

identifying himself as a police officer.  *Fundiller*, 777 F.2d at 1441.  Here, there can be no

question that Bailey knew who the defendants were and that they had authority over him

while he was incarcerated; in other words, that they were not unidentified assailants who

had come to his jail cell to maliciously assault him.

　　　　Because it is clear that Bailey cannot establish a claim of excessive force by any

defendant in light of his non-compliance with the requests of the corrections officer

defendants and later flight from his cell, the Court need not spend much time addressing Bailey's contentions that he does not have to identify who did what to him or was in a position to intervene.  Because there was no excessive force, there was no need for any of the defendants to intervene, and it does not matter who committed the alleged acts, because none of them were committed maliciously or sadistically, but rather were undertaken in the interest of maintaining discipline and security in a correctional facility.

For the reasons stated above, Bailey's claims of excessive force and failure to intervene are due to be DISMISSED, therefore, defendants' motion on these claims, Doc. #37, is due to be GRANTED.

### b.  Bailey Does Not Allege Sufficient Facts to Indicate That The Corrections Officer Defendants Performed an Unconstitutional Strip Search

In determining whether a given search of an inmate's person violates the inmate's rights, this Court returns to the theme of deference to prison officials mentioned in earlier sections.  In a case holding that body-cavity searches of inmates were constitutional the Supreme Court also held that jailers and corrections officials should be "accorded wide deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 558 (1979).

The *Bell* Court held that, to determine whether a given inmate search, particularly a strip-search, was reasonable and therefore constitutional, a court must balance "the need for the particular search against the invasion of personal rights that the search entails," considering "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.* at 559. The Court also noted "[a] detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common." *Id.* In light of this pronouncement, it is worth noting that Bailey alleges all of the search-related incidents in his complaint were undertaken as part of a contraband search. Doc. #1 at 10.

The Eleventh Circuit explicitly adopted *Bell*'s holding in *Powell v. Barrett*. In *Powell*, the Eleventh Circuit, sitting en banc, held that a strip search of five inmates, crowded with others into a group shower and searched in front of one another without reasonable suspicion that these particular inmates were concealing contraband, was constitutional under *Bell*, and that, indeed, the circumstances of these searches was less intrusive than those at issue in *Bell*. *Powell v. Barrett,* 541 F.3d 1298, 1301-02, 1313 (11th Cir. 2008) (noting that the Supreme Court upheld visual body-cavity inspections in *Bell*, as compared to the visual "front and back" inspection employed in *Powell*).

The factual allegations in the complaint do not indicate that the search Bailey was subjected to was any more intrusive or abusive than those conducted in *Bell* or *Powell*. Bailey alleges that he was told "to stand in spread his butt-cheeks while in front of the other cellmates.  Moon then made Bailey squat and cough in an inappropriate way in front of the other inmates."  Doc. #1 at 11, ¶4.

By comparison, the procedure held Constitutional in *Bell* involved a policy requiring that a male inmate "lift his genitals and bend over to spread his buttocks for visual inspection."  *Bell*, 441 U.S. at 558, n. 39.  The Supreme Court also noted that the inmate was never touched during the procedure at issue in *Bell*.  *Id.*  In that regard, the "visual search procedure" upheld in *Bell* is consistent with the search undergone by Bailey, as Bailey does not allege that any of the guards ever touched him during what, by all indications, was a routine contraband search.  This Court is unable to find Constitutional significance in the fact that Bailey was made to "cough in an inappropriate way."

Bailey's Response to Defendants' Motion to Dismiss notes that "searches [under *Bell*] may in fact be illegal searches based upon the criteria set out in the case."  Doc. #43 at 14.  However, nothing in either the allegations or in Bailey's response alleges sufficient facts to hold that the search at issue here was illegal.

For the reasons described above, the Court finds that the search conducted on Bailey was reasonable in light of the fact that it was initiated to find contraband, in a correctional facility, and conducted in a manner consistent with case law on constitutional searches. *Bell*, 441 U.S. at 559.  Bailey's claims regarding an unconstitutional search are therefore due to be DISMISSED and defendants' motions regarding this claim are due to be GRANTED.

### c.  Bailey Does Not Allege Sufficient Facts to Show the Corrections Officers or Sergeants Buchmann, Reynolds, and Jones Unconstitutionally Confined Him[17]

Bailey's claims regarding generally overcrowded conditions at the Houston County Jail are disposed of in Part IV.C.2.c, *supra*.  This section relates solely to Bailey's claim that these defendants unconstitutionally confined Bailey when they placed him in a

---

[17]  The "Factual Allegations" portion of Bailey's complaint does not indicate who placed Bailey into the "closet cell."  *See generally* Doc. #1.  Indeed, Sergeants Jones and Reynolds are not mentioned in the "Allegations" section at all; their names first appear on page sixteen, in Bailey's first "Count."  In "Count XIV," Bailey alleges that this grouping of defendants placed Bailey in the cell.

In light of this contrast between the facts and the counts, it is difficult to determine how to construe this pleading in a light most favorable to Bailey.  On the one hand, if it took three Sergeants and seven corrections officers (three of whom are not defendants) to place Bailey in the cell, it seems highly unlikely that Bailey was not resisting in some way.  On the other hand, if this mob of law enforcement officers was not directly involved with putting Bailey in the cell, and Bailey makes these allegations based on a desire to include as many defendants as possible in his complaint, it is more likely that some of these defendants will be entitled to attorney's fees under 42 U.S.C. § 1988.  *See* Part V.F, *infra*.

For the sake of argument, the Court assumes that Bailey submitted meekly as ten prison officials assisted in directing him to his temporary cell.

38

"closet cell."  Doc. #1 at 36, Count XIV.  This unconstitutional confinement claim is also due to be DISMISSED.

The corrections officers' decision to segregate Bailey from his cellmates and the general population of the Houston County Jail following an incident where Bailey was uncooperative and attempted to flee his cell is one that is entitled to discretion.  *Whitley v. Albers*, 475 U.S. at 312, 321-22; *see also* Part IV.D.2.a, *supra* (discussing deference to prison officials).

As to the conditions of Bailey's eight-hour confinement in a "closet-cell," this Court finds that the conditions alleged were not unconstitutional.

As the defendants point out in their Brief in Support of Motion to Dismiss, Doc. #37, the Supreme Court has implicitly held that a sixty-three square foot cell could constitutionally hold two prisoners.  Doc. #37 at 18-19, *citing Rhodes v. Chapman*, 452 U.S. 337, 343, 348-49 (1981).  As defendants note, this amounts to approximately a four-by-four square foot space for each inmate, or approximately the size of a walk in closet. *Id*.  Also worthy of note is that the *Rhodes* Court's holding was based on a "practice, not a temporary condition."  *Rhodes*, 452 U.S. at 344.

Additionally, in order to amount to "cruel and unusual punishment" under the Eighth Amendment, the inmate must meet the two-part objective / subjective test set out in Part IV.C.2.c, *supra*.  In other words, the inmate must show that, (1) a condition of

confinement must be "extreme" and " that a condition of his confinement pose[s] an

unreasonable risk of serious damage to his future health or safety" *and*, (2) that the

officials who subjected the inmate to this condition were deliberately indifferent to the

risk posed to the inmate.  *Fischer v. Ellegood,* 238 Fed. App'x 428, 433 (11th Cir. 2007);

*Chandler v. Crosby*, 379 F.3d 1278, 1289-90 (11th Cir. 2004).

Bailey's claim does not meet either the subjective, nor the objective component of

the test.  Bailey has alleged nothing to indicate that his temporary placement in a small

cell posed an unreasonable risk of serious damage to his future health or safety.  All

Bailey alleges is that he was placed in the cell.  Bailey does not even allege that he was in

need of any of the facilities (sink, toilet, medical attention) that were not provided during

this temporary confinement.  Even if the conditions alleged satisfied the objective

standard by posing a serious risk to Bailey's future well-being, there is no indication that

any of the defendants were deliberately indifferent to this risk as Bailey does not even

allege that, by placing him in the small cell, defendants were acting for "the very purpose

of causing harm or with knowledge that harm [would] result."  *Farmer v. Brennan*, 511

U.S. 825, 835 (1994); *see also Alfred v. Bryant*, 378 Fed. App'x 977, 980 (11th Cir. 2010)

(collecting cases where prisoners' conditions of confinement claims did not rise to the

level of Eighth Amendment violation).

For the reasons discussed above, all claims of unconstitutional confinement by Bailey against all defendants are due to be DISMISSED.

### d.  Precedent Establishes That The Use of TASERs is Constitutional

For the reasons discussed in Part IV.C.2.d, *supra*, any claims relating to the correction officer defendants use of TASERs is hereby due to be DISMISSED.

### e.  Bailey Does Not Allege Sufficient Facts to Show He Was Retaliated Against in Violation of the First Amendment

To prevail on a First Amendment retaliation claim, Bailey must allege facts to support three elements:  (1) that his speech was constitutionally protected; (2) that he suffered an adverse action that would deter an average person of ordinary firmness from engaging in such speech; and (3) that there is a causal relationship between the alleged retaliatory action and the protected speech.  *Smith v. Mosley,* 532 F.3d 1270, 1276 (11th Cir. 2008).  Defendants concede that plaintiff has satisfied the first two elements, but contend that Bailey has not established a causal connection between the events described in his complaint and his filing of a lawsuit in this court three years ago.

In May 2005, Bailey filed a lawsuit against, among others, Houston County Jail Officials and Corrections Officer Moon.[18]  See Complaint, ECF No. 1, Bailey v. Bonnin, No. 1:05-cv-00419-MHT-TFM (M.D.A.L., filed May 5, 2005).  In the instant suit, Bailey

---

[18] Moon is the only defendant in Bailey's first lawsuit mentioned in Bailey's current complaint, though Moon is not a defendant in this lawsuit.

alleges that, after Moon and Armstrong completed the search of Bailey's cell and person, Bailey "reminded the officers that I have a lawsuit against you and I am not going to play with you," and that "if they returned to my cell at any time, they need a sergeant / supervisor to come with them."  Doc. #1 at 11, ¶ 4.  According to Bailey's allegations, only Moon and Armstrong were aware of Bailey's previous suit, and Armstrong did not become aware of the suit until after the contraband search was completed or nearly completed.  Sergeant Buchmann, who is alleged to have ordered the search, is not alleged to have been aware of Bailey's previous suit.

Bailey's allegations make it impossible to establish a causal connection because the facts, as recounted in the paragraph above, are not sufficient to make out the link between the contraband search and Bailey's previous lawsuit.  At best, Bailey may make out a claim that Moon, a defendant in the previous lawsuit, was retaliating against Bailey, but Moon is not a defendant in this suit.  Therefore, Bailey's retaliation claim fails due to his failure to plead facts which plausibly establish a causal connection.

Even if Bailey's allegations could somehow be read to make out a causal connection between the behavior complained of and Bailey's previous lawsuit, Bailey's retaliation claim would fail for two additional reasons:  the temporal gap between the filing of Bailey's original lawsuit and the incident complained of precludes finding of a

causal connection, and the fact that the complained of action would have occurred even in the absence of Bailey's previous lawsuit.

In the employment law context, the Eleventh Circuit has held that a substantial delay between the protected speech and the adverse action precludes a retaliation claim as a matter of law. *Thomas v. Cooper Lighting, Inc.,* 506 F.3d 1361, 1364 (11th Cir. 2007) (holding that plaintiff's retaliation claim failed to establish causal connection where plaintiff was fired three months after accusing her supervisor of sexual harassment). There is no reason to think that this standard would apply any differently in the context of this case, and it is worthy of note that the temporal gap in *Thomas* was a mere three months, whereas here the adverse action occurred more than three years after the filing of Bailey's initial lawsuit.

Additionally, there is no guarantee that the actions undertaken by the defendants here would not have occurred absent Bailey's earlier lawsuit as required under *Mosley*. 532 F.3d at 1278 ("If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail").  The contraband search was allegedly ordered by a Sergeant who is not alleged to have had knowledge of the earlier lawsuit.  On the facts alleged, Bailey himself brought about everything that happened after the initial search through his initial failure to comply with the requests of the corrections officers and his later flight from his cell.  The Court finds nothing in

Bailey's complaint that sufficiently alleges that the incident complained of would have

unfolded any differently had Bailey not filed his earlier lawsuit.

For the reasons stated above, Bailey's retaliation claims are due to be

DISMISSED.

### f.  Bailey Did Not Have a Right to Have a Supervisor Present During the Alleged Incident

Bailey's mere insistence, both on the night in question and in his complaint, that he

was entitled to have a supervisor present during all of his interactions with correctional

officers does not grant him such a right.  As Defendants point out, if inmates had a right

to have every interaction with prison personnel directly monitored by a supervisor, the

efficient operation of correctional facilities would be greatly hindered.  Additionally,

Bailey's complaint may be read to imply that he believes he has a right to have a

supervisor present as a result of his earlier lawsuit,[19] but there is nothing in the record of

that case to indicate that this Court ever granted Bailey such relief.  For these reasons, all

of Bailey's individual capacity claims against all defendants are due to be DISMISSED.

---

[19] Bailey's statement to Officers Moon and Armstrong, "I have a lawsuit against you and I am not going to play with you and . . . [sic] if they returned to my cell at any time they need a sergeant supervisor to come with them" seems to make such an implication.

**E. Baileys Official Capacity Claims Against All Defendants Are Due to Be Dismissed**

**1.  Supervisory Defendants Are Entitled To Eleventh Amendment Immunity Against Suits For Money Damages**

A suit against a state officer in his official capacity is effectively a suit against the state.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  To determine whether an individual is a state official covered by Eleventh Amendment immunity, courts must consider the law of the state.  *Mt. Healthy City Sch. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977).  Under Alabama law, including provisions of the Alabama Constitution, a sheriff is an executive officer of the state.  *Parker v. Amerson*, 519 So. 2d 442, 442–43 (Ala. 1987).  Alabama jailers have been held to be state officials entitled to Eleventh Amendment immunity because, like Sheriff's deputies, they are "responsible to the sheriff for their performance of state-mandated duties."  *Lancaster v. Monroe Cnty., Ala.,* 116 F.3d 1419, 1429-30 (11th Cir. 1997).  This same analysis applies to corrections officers and prison officials. *Id; see also Hope v. Allen,* No. 2:07cv210-MHT, 2009 WL 1688177 (M.D. Ala., June 16, 2009) (adopting magistrate judge's recommendation that corrections officer defendants be entitled to Eleventh Amendment immunity).  Accordingly, Eleventh Amendment immunity bars § 1983 suits for money damages against defendants in their official capacities.

### 2.  Defendants Are Not "Persons" For The Purposes of a § 1983 Suit for Money Damages

The defendants also argue that, as state officials, they are not considered "persons" for purposes of § 1983 when sued in their official capacity for money damages. The Court agrees.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("Neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); Carr v. City of Florence, Ala., 916 F.2d 1521, 1525 n.3 (11th Cir. 1990).  For this reason as well, then, Bailey's official capacity claims for monetary damages are due to be dismissed.

### 3.   Bailey Does Not Have Standing To Pursue Official Capacity Claims for Injunctive Relief

Bailey seeks "preliminary and permanent injunctions . . . requiring [sic] Defendant to set in place strict guidelines for the use of tasers" and "preliminary and permanent injunctions against Defendants . . . restricting them from carrying tasers on their person or allowing them to have tasers under their control while dealing with Bailey."  Doc. #1 at 38-39.

Bailey's requests for injunctive relief must be denied because Bailey's has not pled sufficient facts to show that any of the defendants have committed an actionable wrong, and because Bailer does not have standing to pursue the injunctive relief sought.[20]

---

[20]  To the extent that Bailey seeks an injunction requiring corrections officer defendants to make guidelines concerning the use of TASERs, this relief must be denied

46

"To be entitled to permanent injunctive relief from a constitutional violation, a plaintiff must first establish the fact of the violation." *Newman v. State of Ala.*, 683 F,2d 1312, 1319 (11th Cir. 1982).  For all of the reasons discussed throughout this Order and Opinion, Bailey has failed to establish that any constitutional violation occurred.  Bailey's claims for injunctive relief should be denied for this reason alone.

Even if Bailey had established a constitutional violation, his claim for injunctive relief would still fail for lack of standing.  A plaintiff seeking the jurisdiction of the federal courts must show a personal stake in the outcome. *Baker v. Carr*, 369 U.S. 186, 204 (1962).  The plaintiff must have sustained, or be about to sustain, some direct injury. *Golden v. Zwickler*, 394 U.S. 103, 109-10 (1969).  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton,* 414 U.S. 488, 495-96 (1974).

As in *City of Los Angeles v. Lyons*, the path back from granting Bailey's requested relief to the redress of his alleged injury is far too speculative for Bailey to be a proper plaintiff. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105-07.  In *Lyons*, the court held that plaintiff lacked standing to pursue an injunction barring all use of chokeholds by the LAPD, despite the fact that Plaintiff had been the subject of an illegal chokehold by a Los

---

because the corrections officer defendants have no authority to promulgate such guidelines.

Angeles police officer.  The Court reasoned that the plaintiff in *Lyons* was unlikely to

again be stopped by a Los Angeles police officer who would "illegally choke him into

unconsciousness."  *Id.* at 105.  Therefore, there was not substantial risk enough that the

plaintiff would suffer future injury from the LAPD to warrant standing in a claim for a

permanent injunction.   Here, it is equally unlikely that Bailey, currently an inmate

serving a life sentence at Holman Prison, Doc. # 48 at 3, would be returned to the

Houston County Jail and engage in behavior similar enough to that alleged in his

complaint that it would again provoke corrections officers at that facility to use their

TASERs on him.

 For these reasons, Bailey's claims for injunctive relief are due to be DISMISSED.

## F.  Attorneys Fees and Costs

 Defendants Hughes, Reed, Jones and Reynolds have moved this court to award

them attorney's fees under 42 U.S.C. § 1988, which states that "[i]n any action or

proceeding to enforce a provision of [42 U.S.C. § 1983] the court, in its discretion, may

allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  42 U.S.C.

§ 1988(b).

 These defendants argue that the court should award fees because Bailey's claims

against them are frivolous; that is, they are "so lacking in arguable merit as to be

groundless or without foundation," *Sullivan v. School Bd. Of Pinellas Cnty.*, 773 F.2d 1182, 1188 (11th Cir. 1985).

The decision to award fees is within the discretion of the district court, 42 U.S.C. § 1988(b), and is to be made on a case-by-case basis. *Head v. Medford*, 62 F.3d 351, 356 (11th Cir. 1995). Courts should consider, *inter alia*, (1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle, and (3) whether the action was decided on dispositive motions rather than at a trial on the merits. *Id.*

Here, Bailey has failed to establish a prima facie case against these defendants. The only specific actions these plaintiffs are alleged to have taken is that Hughes and Reed purchased and issued TASERs, and Sherriff Hughes wrote a letter to the Department of Corrections asking that Bailey be disciplined for his conduct at Houston County Jail. *See generally* Doc. #1. Reed, Jones and Reynolds are not mentioned in the factual allegations at all. *Id.* at 9-15. Rather, they are only named in the Counts section of Bailey's complaint. Where a plaintiff sues a defendant and makes no allegations against that defendant, there is no prima facie case.

Additionally, to the extent that plaintiff may argue his claims against these defendants were based on a theory of vicarious liability, such claims are entirely without merit. Respondeat superior liability is unavailable under § 1983 as a matter of law. Part IV.C.2.a, *supra.* Defendant pled no facts regarding a failure to train or an illegal custom

49

or policy promulgated by these defendants. *Id.* To reiterate, Bailey has not pled that any of these defendants did anything that remotely resembles a constitutional violation.

In response to defendants' motion for attorney's fees, in a section headed "The District Court will have to determine whether Sheriff Hughes and Reed are entitled to Attorney's Fees," Doc. #48 at 5, Bailey cites a standard for the award of attorney's fees to a prevailing defendant that has not been adopted by the Eleventh Circuit in the context of a claim for fees under § 1988. *See id, citing Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978) (holding that fees should be awarded under employment discrimination enforcement statute if the action is "found to be unreasonable, frivolous, meritless, or vexatious").

In § 1988 cases, the Eleventh Circuit has adopted other language from *Christianburg* as its standard for awarding fees to prevailing defendants. *See Head*, 62 F.3d at 355 ("prevailing defendants . . . may be awarded attorney's fees only when a court finds that the plaintiff's claim was 'frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.' (*quoting Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 417 (1978))). After citing irrelevant language from *Christianburg*, Bailey concludes this section of his response by noting "[i]t is the Court's discretion as to whether it will award attorney's fees." *Id.*[21]

---

[21] The Court agrees.

The other two aspects of the Eleventh Circuit's *Head* test are also satisfied. Defendants have not offered to settle with Bailey, and, pursuant to this order, this case is being resolved on a dispositive motion, with defendants prevailing, rather than with a trial on the merits.

The Eleventh Circuit has held that the standard for awarding attorney's fees to a prevailing defendant under 42 U.S.C. § 1988 is "stringent," and that such an award should be made only if the plaintiff's claims are "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christianburg*, 434 U.S. at 421.  Even under this demanding standard, because Bailey pleads no facts by which a court could find a plausible violation of a constitutional right by these defendants,  the Court holds that these defendants are entitled to reasonable attorney's fees.

## VI.  CONCLUSION

In accordance with the terms of this opinion, it is hereby ORDERED that:

(1) Motion to Dismiss by Andy Hughes, Commander Reed, Doc. #32, is hereby GRANTED;

(2) Motion to Dismiss by Sgt. [sic] Buchman, Sgt. Jones, Sgt. Reynolds, Doc. #34, is hereby GRANTED;

(3) Motion to Dismiss by Corrections Officer Armstrong, Corrections Officer Chancey, Corrections Officer Harrison, Corrections Officer Laney, Doc. #36, is hereby GRANTED;

(4) All of Bailey's claims against all defendants are DISMISSED, with prejudice, in their entirety;

(5) Defendants Hughes, Reed, Jones, and Reynolds motion for attorney's fees under 42 U.S.C. § 1988 is GRANTED.

(6)  On or before **October 14, 2011**, these Defendants shall file an itemization of the amounts sought as attorney's fees and expenses with supporting documentation including affidavits establishing the nature of the tasks undertaken by counsel, the amount of time each task took, the reasonableness of the time spent on the matter, and the reasonableness of the hourly rates requested.  Any affidavit addressing the reasonableness of the hourly rate sought must come from an attorney, other than counsel of record, who has knowledge about the current rates for this type of work in the relevant legal market, Dothan, Alabama.  These submissions should include specific and detailed evidence from which the Court can determine the reasonableness of the time spent on different parts of the lawsuit which set out with sufficient particularity the general subject matter of the time expenditures so that the court can assess the time claimed for each activity.  These submissions must also include itemized documentation of any expense for which Defendant seeks an award.  Any response by the Plaintiff to Defendants' itemization of attorney's fees shall be filed by **October 21, 2011.**

(7) A separate final judgment will be entered consistent with this Memorandum Opinion and Order.

Done this the 30th day of September, 2011.


 /s/ Mark E. Fuller
UNITED STATES DISTRICT JUDGE